619 So.2d 803 (1993)
STATE of Louisiana
v.
Leroy WOODS.
No. KA 92 1209.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
*804 Doug Moreau, Dist. Atty. by Laurie White, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Public Defender's Office, Baton Rouge, for defendant/appellant.
Before WATKINS, CRAIN and GONZALES, JJ.
GONZALES, Judge.
Leroy Woods was indicted for second degree murder. He pled not guilty and, after trial by jury, was convicted of the responsive offense of manslaughter, a violation of La.R.S. 14:31. Subsequently, the state filed a bill of information charging defendant as a second felony offender. See La.R.S. 15:529.1. After defendant stipulated to the habitual offender bill, the court adjudicated him to be a second felony offender and sentenced him to serve a term of twenty years at hard labor, with credit for time served. Defendant has appealed, urging three assignments of error. On appeal, defendant specifically has abandoned assignment of error number two (insufficient evidence).

FACTS
On February 2, 1991, defendant shot Milton Brown over what apparently was a gambling dispute. Brown had picked up his girlfriend, Gwendolyn Stewart, from her job at about 10:15 p.m. He then drove to the corner of Gus Young Avenue and 48th Street in Baton Rouge. He got out of the car and told Stewart he would return in a few minutes. Then Brown went into a nearby house. After about fifteen or twenty minutes, Brown came out of the house alone. He told Stewart he would be ready to leave soon and walked across the street to where some men were shooting dice.
Later, Stewart observed a man come from the direction of the house where Brown had been; she saw him go across the street in the same direction as Brown. Stewart identified defendant in court as being this man. After defendant went across the street, Stewart heard Brown begging not to be shot and heard three gunshots. Because the men were behind a garbage bin, Stewart could not see either Brown or the person who fired the shots; but immediately afterward she saw defendant with a gun in his hand.
Brown sustained multiple gunshot wounds to various parts of his body and became partially paralyzed. While conscious at the scene, he told the first officer who arrived that Leroy Woods was the person who had shot him. Before surgery, he explained to the surgeon that during a dice game he and another man had argued over which number had rolled. The man left and returned with a gun to shoot Brown. Despite surgery, Brown died a few days later as a result of his injuries.

INTRODUCTION OF WITNESS' TAPED STATEMENT
In the first assignment of error, defendant asserts the court erred when it overruled defendant's objection to the introduction of a taped statement given by Gwendolyn Stewart to the police. Defendant argues, and the state concedes, that the tape was inadmissible under La.C.E. art. 612(B), which allows a witness to review any writing, recording, or object in order to refresh his memory while testifying. Defendant further argues the tape recording was inadmissible hearsay and did not meet the requirements of the recorded recollection exception to the hearsay rule (La.C.E. art. 803(5)) because Stewart did not have a lapse of memory as required by that exception.
When called as a witness, Stewart testified generally about defendant picking her up from work and driving to the location where the offense occurred. After stating *805 that she observed defendant walk across the street before the offense, she indicated she did not see defendant after the offense because she slid down in the car to hide. The prosecutor pursued the line of questioning and referred Stewart to previous statements made by her. Then the prosecutor again asked her "when" she saw defendant at the scene. This time Stewart replied that she could not remember. When questioned further, she responded as before that she did not see defendant again. Stewart then admitted that she was afraid to testify. After a bench conference, the state asked Stewart if it would assist in her recollection of the events to hear the taped statement she gave to the investigating detective after the offense. When Stewart replied that it would, defendant objected to the playing of the tape, arguing that the recollection of the witness was the best evidence. In response, the state argued the recording was admissible to refresh the witness' recollection. The court overruled the objection, and the recording (State Exhibit 19) was played before the jury. In her taped statement, Stewart told the detective that she saw defendant with a gun in his hand after she heard the gunshots. She also observed defendant walk back into the house after the offense.
After hearing the tape, Stewart testified that she remembered making the statement. She maintained that she was telling the truth when she gave the statement to the police and that the tape is how she remembers the facts of the offense. When questioned further about the offense, Stewart identified clothing viewed in court as being the clothes worn by defendant on the night of the offense. She also testified that she saw a gun in defendant's hand after the shooting.
Hearsay is defined as an oral or written assertion (or a nonverbal assertion if intended as an assertion), other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La.C.E. art. 801. Hearsay is not admissible except as provided by the Code of Evidence or other legislation. La. C.Cr.P. art. 802.
On appeal, the state argues the taped statement was admissible as a recorded recollection, an exception to the hearsay rule of exclusion. Article 803(5) of the Code of Evidence establishes the recorded recollection exception:
Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
Under this provision, the following foundation must be established: (1) the witness should have had firsthand knowledge of the matter described in the memorandum or record; (2) the memorandum or record should have been made or verified by the witness at a time when the matter reported was fresh in his memory; and (3) the memorandum should accurately reflect the witness' earlier knowledge of the matter recorded; and (4) while testifying, the witness should have insufficient recollection.[1]See G. Pugh et al., Handbook on Louisiana Evidence Law, pp. 364-65 [authors' note no. (1) to La.C.E. art. 803(5)] (1992 ed.).
In this case, the tape recording consisted of Stewart's statement to the police concerning events she personally witnessed. She made the statement shortly after the offense and testified the crime was "fresh" in her memory when she spoke to the detective. She also testified that she told the truth when she gave the statement. However, the record does not support the state's position that Stewart's *806 memory was impaired. Although Stewart testified inconsistently before the tape was played (alternatively stating that she did not see defendant after the offense and that she could not remember whether or not she saw defendant), upon hearing the tape recording, her memory was refreshed and she specifically testified that the information in her taped statement was how she remembered the events of the night of the offense.
Absent the required memory loss, article 803(5) does not authorize a witness to read the memorandum or listen to the recording before the jury. To do so under these circumstances violates the hearsay rule. See La.C.E. art. 803(5), comment (e). If the witness' memory is refreshed upon consulting the memorandum or recording, then the memorandum or recording may not be presented before the jury and the provisions of La.C.E. art. 612 apply. See G. Pugh et al., Handbook on Louisiana Evidence Law, p. 365 [authors' note no. (2) to La.C.E. art. 803(5)] (1992 ed.). Once the witness' memory is refreshed, he must testify from his memory independent of the writing or recording which was used to refresh his memory. La.C.E. art. 612(B).[2]
Accordingly, the court erred by overruling defendant's objection to the playing of the taped recording before the jury. However, erroneous admission of hearsay evidence requires reversal only when there is a reasonable possibility that the evidence might have contributed to the verdict. The inquiry is whether or not the reviewing court, assuming that the damaging potential of the cross-examination of the declarant were fully realized, is nonetheless convinced the error was harmless beyond a reasonable doubt. State v. Wille, 559 So.2d 1321, 1332 (La.1990). See also La.C.E. art. 103(A).
In the instant case, admission of the recording clearly was harmless error. The most damaging evidence emitted from the recording was Stewart's claim that she saw defendant after the offense with a gun in his hand and that people at the scene referred to defendant by name ("Leroy"). However, Stewart later testified in court from her own memory that she saw defendant with the gun. Additionally, Robert Matthews, a defense witness who testified concerning statements made to him by Stewart, testified on cross-examination that Stewart told him she saw defendant after the shooting come from behind the garbage bin with a pistol in his hand. Moreover, while conscious at the scene, the victim identified his shooter by name. Thus, we conclude the trial court's error was harmless beyond a reasonable doubt.
The assignment of error is without merit.

EXCESSIVE SENTENCE
In the third assignment of error, defendant argues his sentence should be vacated and the case remanded for resentencing because of the court's failure to comply with the requirements of La.C.Cr.P. art. 894.1(C), which requires the court to state for the record the aggravating and mitigating factors considered by the court and the factual basis for the sentence.
As a second felony habitual offender convicted of manslaughter, the possible sentence for defendant was imprisonment at hard labor for not less than ten and one-half years and for not more than forty-two years, without benefit of probation or suspension of sentence. La.R.S. 14:31 (prior to its amendment by 1992 La.Acts, No. 306, § 1) & 15:529.1(A)(1) & (G). Thus, defendant's sentence of twenty years at hard labor complies with the statutory requirements.
When defendant was sentenced, the new sentencing guidelines (effective January 1, 1992) were in effect. See 1991 La.Acts, No. 22, § 2 & No. 38, § 3. During the sentencing, the court stated that it was sentencing defendant in compliance with these guidelines.
Defendant did not object to the trial court's possible improper application of the sentencing guidelines or file a motion to reconsider the sentence. The failure to file *807 or make a motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. La.C.Cr.P. art. 881.1(D) (effective Jan. 31, 1992). See also La.C.Cr.P. art. 881.2(A)(1). Thus, defendant is barred procedurally from having the assignment of error reviewed.
The assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The memorandum need not be in written form. As a comment to article 803(5) indicates, a tape recording suffices. La.C.E. art. 803(5), comment (b).
[2] To avoid the problem peculiar to audio recordings which occurred in this case, the witness initially should be allowed to listen to the recording outside the jury's presence.