STEWART, Judge.
Defendant, James Silvio, Jr., was charged by bill of information with three counts of illegal possession of stolen things, in violation of LSA-R.S. 14:69. Silvio waived his right to trial by jury and the state dismissed the third count. After a bench trial, Silvio was convicted on count one (illegal possession of a stolen camcorder) and acquitted on count two (illegal possession of a stolen generator). *1346 Silvio appeals his conviction and his five-year hard labor sentence. For the reasons expressed, we reverse his conviction, vacate his sentence and discharge the defendant.
FACTS
James Silvio, Jr. and Greg Harrington (Harrington) became friends at the “Impact Program”[1] operated by the Louisiana Department of Corrections. Upon their release in March 1991, they stayed in communication with one another. On August 17, 1991, Harrington and Silvio went to Wright’s Sound Gallery in Shreveport, Louisiana. Harrington attempted to purchase a camcorder with a stolen credit card. The store clerk became suspicious and called the police. The police arrived and arrested Harrington for attempting to purchase a camcorder by fraud. Silvio had driven away before the police arrived.
Louis Stacks, the probation officer for both Harrington and Silvio, was made aware of Harrington’s arrest and went to talk to Harrington in the Shreveport City Jail. Statements given by Harrington led Stacks to believe that stolen goods could be found at Silvio’s house. Stacks went to Silvio’s home and found a compact disc player, and a camcorder which had been stolen from Dillard’s by Harrington. Stacks returned later to Sil-vio’s home and found a stolen generator. Silvio was arrested and charged with three counts of receiving stolen goods, to wit: a camcorder, a generator, and two television sets, in violation of LSA-R.S. 14:69. Pursuant to a pre-trial agreement, the state dismissed count three with respect to the television sets and Silvio waived his rights to jury trial on counts one and two. After a bench trial, Silvio was convicted on count one regarding the camcorder and acquitted on count two regarding the generator.
Defendant has preserved five assignments of error on appeal.
Assignment No. 1: The trial court erred in denying the defendant’s motion for judgment of acquittal because the evidence adduced at trial was insufficient to support such finding.
Assignment No. 3: The trial court erred in considering the prior inconsistent statement, alluded to by the state for the sole and expressed purpose of impeachment but not introduced into evidence, in determining the substantive issues of fact relative to the guilt or innocence of the defendant.
Assignments Nos. 2, 4, and 5: These assignments all question the sufficiency of the evidence for conviction.
Because after reviewing the evidence in the light most favorable to the prosecution, we find the evidence insufficient to allow a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, we reverse the defendant’s conviction and order him discharged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Finding the evidence is insufficient to convict, we pretermit any discussion of the defendant’s other assignments of error.
DISCUSSION
In this bench trial, the state presented the following evidence regarding the stolen camcorder charge.
Greg Luman, a salesman at Wright’s Sound Gallery, testified that Silvio and Harrington drove up to the store together. He stated that they came in together and separated after entering the store. Harrington expressed interest in purchasing a camcorder. Luman testified that he never dealt with Silvio as a buyer. Luman tried to complete the sale but experienced authorization problems with the credit card that Harrington had given him. Silvio, who had rejoined Harrington, started acting “fidgety, nervous and antsy”, left the store and went to sit in the car. Luman called the police and saw Silvio drive away “calmly” before the officers arrived.
C.L. Skillingstad testified that his son, Monty, had become friends with Silvio and Harrington when they were in the “Impact Program” together. He recalled that in July *1347 1991, Silvio came to visit at his house. Monty was interested in installing speakers in his car and had shopped around for prices. Sil-vio told Skillingstad and Monty that he could get speakers at wholesale prices and give them a better deal. A couple of weeks later, Silvio returned with an Alpine amplifier and speakers and installed them in Monty’s car. Skillingstad recalled that Silvio wanted $275 for the equipment. Unsure whether to make the purchase, Skillingstad and Monty tried out the equipment for a while and then turned it over to the authorities when it was later determined to be stolen. Harrington testified Silvio got the speakers and amplifier from him.
Louis Stacks, the probation officer, testified that he had almost daily contact with Silvio and Harrington after their release from prison in March 1981 and that he and Silvio discussed Harrington frequently. Stacks testified that Harrington frequently borrowed money from Silvio and that Silvio knew that Harrington was living in a garage apartment, that he was not working and that he did not have any money. Specifically, Stacks testified that Silvio knew that Harrington had been fired from his job. Stacks further testified that he visited Harrington at the Bossier City Jail where Harrington gave him information which caused him to visit Silvio at his home and locate the camcorder in question.
Over defense counsel’s objections, the state elicited testimony from Stacks that other items which were determined to have been stolen were found at the Silvio home on a subsequent visit. The state asserted that this evidence was elicited to show the complete circumstances under which Silvio came into possession of the camcorder. Silvio’s guilty knowledge, the state argued, is shown beyond a reasonable doubt by the totality of the circumstances. Despite the fact that Harrington was subpoenaed by the state and available in the courthouse during the trial, he was not called as a witness by the state.
When the state rested, defendant filed a motion for judgment of acquittal. In support of this motion, Silvio argued to the trial court that the absence of Harrington’s testimony during the state’s case should be construed against it and was fatal to its case. Defense counsel conceded that the state had arguably put on sufficient evidence to show that Harrington had stolen various items, but such a showing alone could not meet the state’s burden of proving that Silvio knew or should have known that the camcorder was stolen. Discussion of the propriety of the denial of the motion for judgment of acquittal is made unnecessary by our finding that the evidence is insufficient to convict.
Immediately upon denial of the motion for acquittal, Silvio called Greg Harrington to the stand as the first witness for the defense. Harrington admitted that he stole a camcorder from Dillard’s Department Store through the use of a stolen checkbook and a phony I.D. card. Harrington also testified that he had told Silvio that the camcorder was a gift from his father and he let Silvio use the camcorder as collateral for $100 that he had borrowed from Silvio.
Harrington testified that Silvio was unaware of Harrington’s intent to steal the camcorder at Wright’s Sound Gallery. However, he had given a prior statement to police which indicated that Silvio knew that he planned to steal a camcorder at Wright’s Sound Gallery. His testimony was impeached with this and other statements which he had made to police.
Silvio denied knowing that the camcorder was stolen, and his family members who used the camcorder denied having any reason to believe that it was stolen.

Assignments of Error Nos. 2, U & 5

Silvio contends in these assignments of error that the evidence was insufficient to support his conviction and sentence. Silvio also contends that this case was based on circumstantial evidence and for this reason the circumstantial evidence must exclude every reasonable hypothesis of innocence.
The constitutional standard of review for the sufficiency of the evidence to support a conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *1348 Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
When circumstantial evidence is used to prove the commission of the offense, every reasonable hypothesis of innocence must be excluded as to that element of the crime which the circumstantial evidence tends to prove. LSA R.S. 15:438. However, this rule does not establish a standard of appellate review separate from that set out in Jackson. State v. Wright, 445 So.2d 1198 (La.1984); State v. Chism, 436 So.2d 464 (La.1983). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of a more comprehensive reasonable doubt standard where circumstantial evidence is used to convict. State v. Wright, supra. The appellate court’s authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. Art. 5 § 10(B); State v. Williams, 448 So.2d 753 (La.App.2d Cir.1984).
Receiving stolen goods, as charged in the instant case, under LSA-R.S. 14:69, consists of four elements, each of which the state had the burden of proving: (1) the intentional possessing, procuring, receiving, or concealing; (2) of anything of value; (3) which had been the subject of any robbery or theft; and (4)under circumstances which indicates that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
In order to prove that Silvio knew or should have known that the camcorder was stolen, the state presented evidence that Sil-vio knew of Harrington’s financial situation and had loaned him money; that Silvio knew of prior criminal activity by Harrington; that Silvio had delivered items for Harrington which were later determined to have been stolen; that Silvio had accepted as collateral or security for, a $100 loan a new camcorder which Harrington said was a gift, but which he actually had stolen from Dillard’s; and that Silvio was present on August 17, 1991, after having already received a camcorder from Harrington, when Harrington attempted to fraudulently purchase another camcorder from Wright’s Sound Gallery in Shreveport. Additionally, the state attempted to buttress its case through cross-examination of Silvio and Harrington.
The record reveals that Silvio knew that Harrington was fired from his job at Splash Pools on July 7, 1991. Knowing that Harrington was unemployed, Silvio delivered for him an Alpine amplifier and stereo to Monty Skillingstad. On this matter, Silvio testified that his only involvement was to deliver the Alpine stereo equipment to Skillingstad, and that he was unaware that it had been stolen. Knowing that Harrington was unemployed, Silvio was present when Harrington “loaned” a generator to Silvio’s mother. Harrington was still unemployed when Silvio received the camcorder from him as collateral for a loan on August 17, 1991.
Harrington testified that he did not reveal to Silvio that the camcorder was stolen. Harrington stated that he asked Silvio for a loan and because he had not paid back the previous loan, Silvio declined. Harrington testified that he offered the camcorder for collateral and that Silvio agreed. Harrington further stated that he told Silvio that the camcorder was a gift from his father. Harrington testified that he concealed his illegal activities and only at Wright’s Sound Gallery did Silvio begin to suspect that something was going on. Harrington also admitted that he lied in his earlier statement to the police when he implicated Silvio regarding the attempted theft at Wright’s Sound Gallery.
We note here that we consider the prior statements of Harrington, which implicated Silvio in Harrington’s misconduct, as prior inconsistent statements, serving only to destroy Harrington’s credibility, and not as substantive evidence of Silvio’s involvement in criminal activity.[2] LSA-C.E. Art. 607 *1349 D(2); State v. Allien, 366 So.2d 1308 (La.1978); State v. Williams, 258 La. 251, 246 So.2d 4 (La.1971); State v. Taylor, 593 So.2d 431 (La.App.2d Cir.1992).
Jack Bridges testified that he was present when Harrington offered the camcorder to Silvio. Bridges stated that he understood the camcorder was a gift from Harrington’s parents and that Harrington was offering to sell it to Silvio for $300.
Silvio’s father, James Silvio, Sr., testified that he was aware that the camcorder was received from Harrington. He stated that his son did not attempt to conceal it and that he himself used it in the family store. He further testified that he had no reason to believe the camcorder had been stolen. Likewise, Marie Silvio, Silvio’s mother, testified that her son did not conceal the camcorder and that it was openly possessed and used by her family. She conceded that although she knew Harrington’s criminal record, she did not believe the camcorder to be stolen.
Silvio testified that Harrington said the camcorder had been a gift from his parents. Silvio stated that he had no reason to believe it had been stolen until he suspected that Harrington was attempting to buy a second camcorder with a stolen credit card. He testified that he knew that Harrington was violating his parole by having a credit card and that he became angry with Harrington and left the store. He stated that when he saw the police arrive, his suspicions were confirmed. He stated further that he immediately went home and called Louis Stacks, his and Harrington’s probation officer, to tell him what had happened and to inform him that he had items from Harrington which he believed were stolen.
The evidence presented at trial included Silvio’s knowledge of Harrington’s unemployment, financial situation, and criminal background; the disproportionate value of the debt for which the camcorder was security; a description of Silvio’s demeanor and behavior at Wright’s Sound Gallery. The state failed to produce any direct evidence that Silvio’s possession of the camcorder was under circumstances which ■ indicate that he knew or had good reason to believe that the camcorder was the subject of theft. Therefore, we must examine the circumstantial evidence to determine whether that evidence is sufficient, as a matter of law, to constitute proof, beyond a reasonable doubt, of this element of the offense. We note that our analysis does not involve determining the credibility of witnesses.
Harrington’s unemployment would not necessarily render him impoverished or without assets to loan or pawn. Although there is evidence that Silvio transported items for Harrington, which were later determined to be stolen, the evidence does not show that Silvio knew these items were stolen before he received the camcorder from Harrington.
Silvio’s demeanor and behavior at Wright’s Sound Gallery, during Harrington’s attempt to fraudulently obtain another camcorder, is susceptible to two equally plausible interpretations. One is that Silvio was involved with Harrington in the attempt to defraud, became concerned when the credit card transaction failed, and left the store to avoid arrest. The other interpretation is that Silvio was unaware of Harrington’s intentions, became concerned when he saw Harrington attempt to use a credit card, attempted to dissociate himself from Harrington by going to the ear, and then driving away. Moreover, under either interpretation, Silvio’s scienter at Wright’s Sound Gallery, after he received the camcorder from Harrington as collateral for the $100 loan, may or may not tend to show that Silvio had reason to know that the camcorder was stolen.
There is no question that the camcorder was a thing of value, was stolen, and was transferred from Harrington to Silvio. However, even when viewed in the light most favorable to the prosecution, these circumstances do not exclude the reasonable hypothesis that Silvio did not know or have good reason to know that the camcorder was stolen. Moreover, even if all damaging evi *1350 dence adduced in the presentation by the defense is considered with the state’s case in chief, and all evidence favorable to Silvio is not considered, the evidence is inadequate to show Silvio’s actual knowledge or reason to know that the object he received and possessed was stolen.
The state has the burden of proving each element of the offense and the fourth element, (good reason to believe that the camcorder was stolen), is separate and distinct from the first element, (possession or receipt). Had the legislature intended for proof of possession, receipt or concealment alone to constitute the offense, they would not have required scienter. State v. Walker, 350 So.2d 176, 178 (La.1977). Thus, mere proof that Silvio possessed the camcorder, or received other items from Harrington under the circumstances shown here, does not constitute evidence that Silvio knew or had good reason to believe the camcorder was stolen. See and compare, Walker, id.
We conclude that, as a matter of law, the State of Louisiana failed to adduce enough evidence to show beyond a reasonable doubt that Silvio knew or had good reason to believe that the camcorder was stolen. The defendant’s conviction is reversed, his sentence is vacated, and the defendant is ordered discharged.
REVERSED AND VACATED.

. LSA-R.S. 15:574.4 provides for the intensive incarceration and intensive parole supervision program to be administered by the Department of Public Safety and Corrections. This six month "boot camp” program is often referred to as the “Impact Program.”

. We attach no credence to Harrington’s pretrial statements because (1) the trial court appar *1349 ently did not believe Harrington's testimony that Silvio did not know about the stolen items, and (2) Harrington’s impeachment does not mean that his prior statements are true and thus that Silvio had guilty knowledge; it only shows that Harrington’s credibility is questionable.