639 So.2d 828 (1994)
STATE of Louisiana
v.
Mary MAYEUX.
No. 94-KA-105.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 1994.
*829 John M. Mamoulides, Dist. Atty., Ronald D. Bodenheimer, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Bruce G. Whittaker, Staff Appellate Counsel, Indigent Defender Board, Gretna, for defendant-appellant.
Before KLIEBERT, GRISBAUM and CANNELLA, JJ.
KLIEBERT, Chief Judge.
The Jefferson Parish Grand Jury returned an indictment on February 9, 1989 charging defendant, Mary Mayeaux,[1] as well as Janine Head and Anastasia Williams, with one count of aggravated battery, LSA-R.S. 14:34, and one count of criminal conspiracy, LSA-R.S. 14:26. At the March 22, 1989 arraignment, defendant pled not guilty.
The charges against defendant originally proceeded to trial before a six person jury on September 25 and 26, 1989; however, those proceedings ended in a mistrial. The matter ultimately proceeded to trial before a six person jury on February 12, 13, 14 and 15, 1990. After considering the evidence presented, the jury unanimously found defendant guilty as charged of aggravated battery and conspiracy to commit aggravated battery.
On February 21, 1990 the trial judge sentenced defendant to ten years at hard labor on the aggravated battery charge and five years at hard labor on the criminal conspiracy to commit aggravated battery, to run concurrently. The judge also afforded defendant credit for time served.
On the same day she was sentenced, defendant filed a Motion for Appeal, which was granted and April 21, 1990 set as the return date. The return date was subsequently extended to May 21, 1990.
On May 10, 1990, the court reporters filed a rule to show cause why the appeal should not be dismissed on the grounds that defendant had failed to pay the costs required for the preparation of the transcript. There is no information in the record to ascertain the disposition, if any, of this rule. However, on September 19, 1991, the Jefferson Parish Clerk of Court's Office placed the case on inactive status.
On July 22, 1992, defendant filed a Motion for Out-of-Time Appeal. The trial judge, on July 28, 1992, denied defendant's motion.
*830 Thereafter, on January 21, 1993, defendant filed an application for post-conviction relief alleging unconstitutional jury instructions as well as ineffective assistance of counsel. Finding no merit to defendant's claims, the trial judge, on May 7, 1993, denied her application for post-conviction relief. On June 29, 1993, defendant applied for a writ of review in this Court, challenging the trial judge's denial of her application for post-conviction relief. Without addressing the substantive merit of defendant's arguments, this Court on September 9, 1993, granted defendant's writ and remanded the case to the district court, stating:
Petitioner is before this court, pro se, from the denial of her post-conviction writ application. In reviewing the record, we find that petitioner had previously filed a motion for appeal which was granted by the trial judge. The court reporter filed a Rule to Show Cause Why Appeal Should Not Be Dismissed, for failure to pay costs, which was never set for hearing. Accordingly, the case is remanded to the district court to ascertain the status of petitioner's appeal, including a hearing on the motion to dismiss, possible indigency of petitioner at this time and right to appointed counsel for appeal.
On November 8, 1993, the trial judge signed an order granting defendant an appeal. The order also specified that the Indigent Defender Board appoint counsel to represent defendant on appeal. It is in this posture that the case is presently before the Court.
The defendant urges two assignments of error: 1) the trial court erred in permitting the State to introduce the recorded statements of two of its key witnesses, under the guise of the recorded recollection exception to the bar against hearsay without a proper foundation first having been set forth; and 2) the evidence was insufficient to support the conviction. Defendant also asks this Court to review the record for any errors patent.
At trial, Peggy Theriot testified that on December 3, 1987, she arrived at her place of employment, Lakeside Dental Clinic located in Jefferson Parish, at approximately 7:30 a.m. After Ms. Theriot exited her car, a woman, whom she did not know, approached her and asked her for the time. When Ms. Theriot looked up to give her the time, this female assailant threw a chemical substance into Ms. Theriot's face, causing severe burns and injuries to her eyes. A doctor who worked nearby heard Ms. Theriot screaming and came to her assistance. The doctor brought Ms. Theriot to East Jefferson Hospital but she was subsequently transferred to Hotel Dieu for treatment. As a result of this incident, Ms. Theriot remained hospitalized for several weeks and underwent approximately seven or eight surgical operations,[2] including several corneal transplants.
At trial, the circumstances leading to this attack evolved through the testimony of numerous witnesses. It appears that the victim, Peggy Theriot, and defendant's brother, Paul Mayeaux, met in 1984 and began having a relationship the next year. When Ms. Theriot eventually ended this relationship, Paul Mayeaux did not accept it very well. In fact, several weeks prior to the instant attack, Paul Mayeaux went to the victim's place of employment and threatened to throw acid in her eyes. Subsequent to that Paul Mayeaux telephoned defendant, his sister, from jail[3] and expressed his desire that bad things happen to Ms. Theriot, including his wish that she have acid thrown in her face. Defendant relayed this conversation to her friends and original co-defendants, Janine Head and Anastasia Williams. In addition to being friends, Janine Head and defendant were co-workers, employed at the Gulf Station on Chateau Estates Boulevard in Jefferson Parish. They were also related insofar *831 as Janine Head was the niece of Paul and Mary Mayeaux.
About three or four days before the actual attack on Ms. Theriot, Janine Head and Anastasia Williams, who were roommates, approached another friend, Lisa Daunie, and asked her if she would throw acid in Ms. Theriot's face in exchange for money. On the night before the planned attack, Janine Head, Anastasia Williams, Lisa Daunie and Lisa Hinkel (who was Lisa Daunie's roommate) went to the victim's place of employment and rehearsed what they were supposed to do. The next morning, Lisa Daunie decided that she did not want to go through with the incident; however, Janine Head and Anastasia Williams carried out the plan anyway. When they arrived at the victim's place of employment, Janine Head, the driver, stayed in the "get-away" car while Anastasia Williams threw the Drano mixture, mixed at Head and Williams' apartment, in Ms. Theriot's face. After the attack, Janine Head went to work. Although she arrived late, defendant, the manager of the station, showed that she had been there since 6:00 a.m. Defendant, Head, and Williams were subsequently arrested for their involvement in this attack.
At trial, defendant denied any involvement in the planning or execution of the attack on Peggy Theriot. Although defendant admitted that she told Janine Head and Anastasia Williams about the phone call she had with her brother Paul, wherein he expressed his desire that bad things happen to Ms. Theriot, defendant claimed that she did not ask Head or Williams to do anything to Ms. Theriot.
After considering the evidence presented, the jury unanimously found defendant guilty of aggravated battery and conspiracy to commit aggravated battery.
By the first assignment of error, defendant complains about the admission of the recorded statements of two state witnesses and original co-defendants, Janine Head and Anastasia (Stacy) Williams. However, at this point we note that at trial, defense counsel failed to object to the introduction of Williams's recorded statement. Therefore, we will address only the introduction of Head's recorded statement. La.-C.Cr.P. art. 841.[4] In order to address this assignment, it is necessary to look at the circumstances surrounding the actual introduction and admission of Head's statement.
At trial, Janine Head testified that defendant was not involved in the attack on Peggy Theriot. After the prosecutor asked Ms. Head some questions about defendant's involvement, he then asked her if she remembered making a statement to police on January 31, 1989, indicating that defendant was, in fact, involved. When the assistant district attorney asked her how her prior statement differed from her testimony at trial, Head claimed that she could not remember because it was a long time ago. In an attempt to refresh Head's memory, the prosecutor then showed this witness her prior statement. Over defendant's objection,[5] the trial judge allowed Ms. Head to review the statement for the purpose of refreshing her memory.
After reading her prior statement, Ms. Head stated that she remembered it now "a little." She also basically admitted that the statement was the one she gave to police. At this point defense counsel renewed his objection on the basis that the State had the actual tape recording in its possession.
Outside the presence of the jury, the State and defendant argued the issue. The court ruled:

*832 .... I think under the circumstances she can use it, she can refresh her memory and if she can't remember it, she can use it to testify from. If she remembers it, she cannot use the recorded statement.
(R., p. 828).
The assistant district attorney then continued his direct examination of Ms. Head and asked her questions about specific discrepancies between her prior statement and her testimony at trial. At some points in her testimony, the witness still claimed that she could not remember what she had previously said, although she did admit that she originally told police that defendant was involved. During Ms. Head's testimony, the prosecutor did not introduce into evidence either Head's taped statement or the transcription of it.
The State subsequently called Detective Antoinette Flaherty Ulmer of the Jefferson Parish Sheriff's Office. Over defendant's objection, Detective Ulmer testified that after Ms. Head was advised of her rights by Lieutenant Susan Rushing she took a taped statement from her. During this line of questioning, defense counsel objected again and asserted his argument as follows:
MR. MASINTER;
Partially. But it's not just statements. It's confessions of the co-defendants, which were transcribed and never authenticated, nor ever signed by the defendants. And one defendant, Janine Head, took the stand yesterday already and was questioned about the statement and it was not introduced. Now what they are doing is trying to corroborate something after the fact. This statement is not a statement of Mary Mayeux. They're going to use the other girl if
(R., p. 876).
As authority for his argument, counsel cited LSA-C.E. arts. 803(5) and 612(B). In response, the prosecutor informed the court that he was offering the recorded statement and transcription as extrinsic evidence to impeach a witness pursuant to LSA-C.E. art. 607D(2). He stated that it was his intent "for impeachment purposes to show that the story that she gave at the time of her arrest and the story that she gave today, is inconsistent in that she inculpated Ms. Mayeaux at the time of her arrest and she has attempted to exculpate her at trial." (R., p. 879). After defense counsel argued that the introduction of the statement constituted unfair prejudice to his client, the trial judge allowed the introduction of Janine Head's transcribed statement, the rights of arrestee form, and the actual tape recording which was played for the jury as they read along with the transcription (State Exhibit Numbers 2A, 2B, and 3). The trial judge so ruled based on his belief that the State complied with LSA-C.E. art. 607D(2). The judge also emphasized to defense counsel that if he so desired, Janine Head would be brought back to court to afford defense counsel the opportunity to question her.
Defendant now contends that the trial court erred in permitting the introduction of the recorded statements of these two witnesses under the guise of the recorded recollection exception to the bar against hearsay, without a proper foundation first having been set forth. Specifically, defendant argues that the State did not lay the proper foundation as is required by LSA-C.E. art. 803(5)[6] that:
(1) the witness should have had firsthand knowledge of the matter described in the memorandum or record; (2) the memorandum or record should have been made or verified by the witness at a time when the matter reported was fresh in his memory; (3) the memorandum should accurately reflect the witness' earlier knowledge of the matter recorded; and (4) while testifying, the witness should have insufficient recollection. *833 See State v. Woods, 619 So.2d 803 (La.App. 1st Cir.1993); G. Pugh et al, Handbook on Louisiana Evidence Law, (Authors' note no. (1) to La.C.E. Art. 803(5)) (1992 ed.).
In response to the argument in defendant's brief, the State asserts that defense counsel failed to object to the introduction of the tapes into evidence and therefore failed to properly preserve the issue for review as is required by LSA-C.Cr.P. art. 841. As was noted above, the State is correct in its assertion that defendant did not object to the introduction of the tape recording or transcription of Anastasia Williams' statement to police, and therefore the defendant is precluded from now raising this argument as it relates to Anastasia Williams. However, the transcript indicates that defendant continuously objected to the introduction of the tape recording and transcription of Janine Head's statement to police. Therefore, insofar as it relates to Janine Head's statement, it appears that this issue is properly preserved for appellate review.
Although defendant's argument focuses on LSA-C.E. art. 803(5), the trial judge admitted the contested evidence pursuant to LSA-C.E. art. 607D(2), for impeachment purposes. The recording and transcription of Head's statement was not introduced during her testimony (but rather during Detective Ulmer's testimony) but Head was allowed to review her recorded statement and transcription in order to refresh her memory.
LSA-C.E. art. 607 reads as follows:
Art. 607. Attacking and supporting credibility generally
A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.
B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.
C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
LSA-C.E. art. 607 permits the introduction of extrinsic evidence to contradict or otherwise attack the credibility of a witness. However, the judge may exclude such evidence if he believes its probative value is outweighed by unfair prejudice. State v. Tammetta, 624 So.2d 433 (La.App. 5th Cir. 1993).
Prior inconsistent statements by a witness may be considered for impeachment purposes only, and not as substantive evidence of the defendant's guilt. State v. Williams, 445 So.2d 1171 (La.1984); State v. Carlos, 618 So.2d 933 (La.App. 1st Cir.1993); writ denied, 623 So.2d 1305 (La.1993); State v. Taylor, 593 So.2d 431 (La.App. 2nd Cir. 1992); State v. Silvio, 623 So.2d 1345 (La. App. 2nd Cir.1993).
In relation to the introduction of extrinsic evidence, LSA-C.E. art. 613 requires that a distinct foundation be laid before evidence of a prior inconsistent statement is admissible to impeach a witness. The witness' attention must be fairly directed to the particular statement and he must be given the opportunity to admit the "fact" of his prior inconsistent statement. If the witness *834 fails to distinctly admit the particular statement, the extrinsic evidence of the prior inconsistent statement is admissible. State v. Taylor, supra.
In State v. Taylor, supra, the defense witness distinctly admitted his prior statement's inconsistency with his trial testimony. Therefore, under LSA-C.E. arts. 607 and 613, the trial court's admission of his prior inconsistent statement was found to be reversible error, because the witness accomplished his own impeachment by admitting to the prior inconsistent statement.
Here, we are faced with a factually distinguishable scenario. Head never admitted the substance of the recorded statement, and thus never impeached herself through testimony. She was asked whether she remembered making the statement, to which she replied yes. She denied that Mayeaux was involved. When shown the statement, Head opined that it looked the same as her statements on the stand. She said that when she stated that Mary was involved, she meant that Mayeaux had come by the apartment that morning. When questioned again, Head said she couldn't remember what she said in the statement. Later, she said that she was scared, drunk, saying anything to the officer and didn't remember what she said.
Unlike in State v. Taylor, where the witness distinctly admitted his prior inconsistent statement, this witness Head vacillated and evaded the prosecutor's questions by claiming she didn't remember what she said in her prior statement. This falls far short of an admission as in State v. Taylor. Thus, we believe the statement was properly admitted under LSA-C.E. art. 607 to impeach Head's claims at trial that defendant was not involved in the attack on Theriot.
By the second assignment of error, defendant contends the evidence was insufficient to support her conviction. She specifically asserts that the only evidence against her came from Jahnea Tassin, a multiple-convicted felon, whose statements against appellant were completely contradicted by her alleged co-conspirators, the State's star witnesses, Head and Williams, who repeatedly denied defendant's direct involvement in the plot against the victim.
In State v. Hearold, 603 So.2d 731 (La. 1992) the Louisiana Supreme Court noted that when issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The Supreme Court stated as follows:
The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 s.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). (footnote omitted)
State v. Hearold, supra at p. 734.
In State v. Burrow, 565 So.2d 972 (La.App. 5th Cir.1990), writ denied, 572 So.2d 60 (La. 1991), this Court set forth the constitutional *835 standard for testing the sufficiency of the evidence as follows:
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Davis, 540 So.2d 600 (5th Cir. 1989). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. DiLosa, 529 So.2d 14 (5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985), dissenting opinion, 475 So.2d 314 (La.1985).
State v. Burrow, supra at 976.
In the present case, defendant was convicted as a principal in the aggravated battery of Ms. Theriot and was also convicted on conspiracy to commit aggravated battery.
In State v. Mayeaux, 570 So.2d 185, 192 (La.App. 5th Cir.1990), writ denied, 575 So.2d 386 (La.1991), this Court set forth the applicable law on the elements of this offense as follows:
Battery is defined as: "the intentional use of force or violence upon the person of another, or the intentional administration of a poison or other noxious liquid or substance to another." LSA-R.S. 14:33. An aggravated battery is one committed with a dangerous weapon. LSA-R.S. 14:34. Under the criminal law of this state, principal parties to crimes are: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." LSA-R.S. 14:24.
In the present case, the evidence presented at trial showed that on the morning of December 3, 1987, Anastasia Williams intentionally threw a highly noxious alkaline liquid into Ms. Theriot's face. Although defendant was at work at the time the offense was actually committed, the defendant admitted her involvement in the crime to Jahnea Tassin, a fellow inmate at the Jefferson Parish Correctional Center. According to Tassin, in one of the conversations she had with Mary Mayeaux, defendant told her about the phone conversation she had with her brother, Paul, wherein he expressed his desire that a truck would roll over his ex-girlfriend, Peggy Theriot, or that someone would throw acid in her face. Defendant then told Janine Head and Anastasia Williams about it, and in turn, they threw a Drano mixture in Theriot's face. In addition, Tassin testified that defendant told her that she brought the Drano to the apartment and they mixed it. Tassin also said that defendant did not perform the attack herself because Peggy Theriot knew defendant and would recognize her.
In addition, the testimony of Lisa Daunie and Lisa Hinkel established defendant's involvement as a principal in the aggravated battery. Lisa Daunie testified that she first heard about the planned attack on Theriot from Head and Williams about 3 or 4 days before the incident when they asked Lisa Daunie to actually throw the Drano in Theriot's face. They also told her that whoever did this would get paid $300.00 by Mary Mayeaux who was supposed to get the money from Paul Mayeaux's friend. Daunie testified that she only personally talked to Mary once about the incident. According to Daunie, the day before the incident, she saw defendant, Head, and Williams walking up the steps to Janine Head and Anastasia Williams' apartment. As they were walking, defendant told Daunie, "You ain't going to be *836 a pussy and backing out, huh?" Daunie also testified that Head told her that the idea of using Drano came from Mary.
Lisa Hinkel testified that her knowledge of the planned attack also came from Janine Head and Anastasia Williams. They asked Hinkel's roommate, Lisa Daunie, to carry out the attack, and told her that whoever did it would get money from Paul Mayeaux through defendant.
In addition, the testimony of Janine Head established that defendant relayed to her the conversation she had with her brother wherein he expressed his desire that bad things happen to Peggy Theriot, including having acid thrown in her face. Ms. Head's testimony also showed that defendant actually went to her apartment the morning of the incident and saw the Drano mixture.
Likewise, Anastasia Williams testified that defendant relayed the conversation she had with her brother to her, that defendant came to the apartment the morning of the incident and saw them mixing the substance although this witness claimed that defendant told them not to do it.
In contrast to this testimony, at trial, defendant adamantly denied her involvement in this attack. Two State witnesses, Head and Williams, also attempted to deny defendant's involvement, although they admitted that they were present when Mary had a phone conversation with her brother wherein he expressed his desire that certain bad things happen to the victim.
In the present case, by returning a unanimous verdict of guilty, the jurors obviously chose to believe the evidence which indicated defendant's involvement as a principal[7] in the attack. It is not the function of an appellate court reviewing a criminal conviction to evaluate the credibility of witnesses and to overturn a jury's factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Mayeaux, supra. The appellate court will not disturb the credibility determinations of the trier of fact beyond the sufficiency evaluation under the Jackson review standards. State v. Mayeaux, supra.
Based on the foregoing discussion, in the present case the evidence produced by the State was sufficient to prove beyond a reasonable doubt, that defendant was guilty as a principal to aggravated battery. In accord, see State v. Mayeaux, supra, where this Court concluded that the evidence was sufficient to sustain defendant's conviction for aggravated battery despite defendant's denial on the witness stand of any involvement in the crime. The evidence showed that an assailant threw a highly noxious alkaline liquid into the victim's face, and that although defendant was in jail at the time of the offense, he admitted his involvement in the crime to several of his fellow inmates. The defendant told these inmates that he procured the perpetration of the crime by telephone from jail, and after the incident, defendant indicated he was responsible for the attack during his telephone conversations with the victim.
Conspiracy to Commit Aggravated Battery (LSA-R.S. 14:26 and 14:34).
The law regarding this offense was also set forth in State v. Mayeaux, supra, as follows:
The elements of the crime of conspiracy are (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. LSA-R.S. 14:26. An overt act need not be unlawful. It may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of its object. State v. Richards, 426 So.2d 1314 (La.1982). Specific intent is an essential element of the crime of conspiracy. Louisiana State Bar Ass'n v. Pitard, 462 So.2d 178 (La.1985). Specific intent is defined as the state of mind *837 which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Although intent is a factual question, it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981). The existence of specific intent is an ultimate legal conclusion to be decided by the trier of fact. State v. Graham, 420 So.2d 1126 (La.1982).
State v. Mayeaux, supra at p. 192.
In the present case, the evidence presented at trial established that defendant and other persons entered into an agreement for the specific purpose of committing an aggravated battery upon Ms. Theriot. The testimony proved that a phone conversation occurred between Mary Mayeaux and her brother, Paul, in which the latter expressed his desire that some bad things happen to Ms. Theriot, including having acid thrown in her face. Defendant then expressed this wish to Janine Head and Anastasia Williams who actually executed the attack. Although there were discrepancies in the testimony, it appears that defendant may have even brought the Drano to Head and Williams' apartment. While it is unclear whether she was present at the time it was mixed, it is certain, by her own testimony, that on the morning of the incident, she saw a cup of Drano in Head's kitchen. The testimony also indicated that a cover-up was discussed and executed whereby defendant would show that Head had arrived at work at 6:00 that morning, although in actuality, she arrived after 8:00 a.m. Moreover, it was conveyed to Lisa Daunie that if she threw the Drano, she would get paid by defendant who would get the money from one of her brother's friends. In addition to this testimony, Ms. Theriot testified that Paul Mayeaux had previously threatened to throw acid in her face and had also told her that his sister, the defendant, would do anything for him. All of these factors indicate that there was an agreement of two or more persons for the specific purpose of committing a crime, plus an act done in furtherance of the object of the agreement. Thus, the State proved beyond a reasonable doubt the elements of this offense.[8]
A review of the record reveals no errors patent.
Accordingly, for the reasons herein presented, the defendant's conviction of aggravated battery and conspiracy to commit aggravated battery and sentence for same are hereby affirmed.
AFFIRMED.
NOTES
[1] Defendant's last name is spelled "Mayeux" throughout the majority of the record as well as in her appellate brief, however, as evidenced by her own signature on various documents in the record, it appears that the proper spelling of her last name is "Mayeaux." Accordingly, throughout this memorandum, defendant's last name will be spelled "Mayeaux."
[2] At trial, Dr. Marguerite McDonald, after being accepted as an expert in ophthamology, testified about the extent of the victim's injuries. She determined that Ms. Theriot had severe burns of both eyes that had been caused by a toxic substance containing an alkali. In addition, the victim had facial, esophogeal, and pharyngeal burns. Dr. McDonald testified that Ms. Theriot's left eye has a good prognosis and at the time of trial was actually providing 20/20 vision. However, the victim's right eye has a bad prognosis and is very likely to be blind forever.
[3] Paul Mayeaux had been arrested in relation to various offenses against Peggy Theriot.
[4] Article 841. Bill of exceptions unnecessary; objections required

A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court's ruling on any written motion.
C. The necessity for and specificity of evidentiary objections are governed by the Louisiana Code of Evidence.
[5] Defendant objected to the accuracy of the statement because it was not signed. Defense counsel also argued that it was not the best evidence because there was a tape recording of the statement.
[6] LSA-C.E. art. 803(5) reads as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
[7] It is recognized that some of the testimony brought out at trial and discussed in this assignment of error constitutes hearsay evidence to which defense counsel did not object. Ordinarily, if hearsay is admitted without objection, it becomes substantive evidence and may be used by the trier of fact to the extent of any probative or persuasive power that it has. State v. Boutte, 384 So.2d 773 (La.1980); State v. Franklin, 520 So.2d 1047 (La.App. 3rd Cir.1987).
[8] See State v. Mayeaux, supra, where this Court found the following evidence sufficient to sustain defendant's conviction for conspiracy to commit aggravated battery:

The evidence presented at trial established that the defendant and at least one other person entered into an agreement for the specific purpose of committing an aggravated battery on Ms. Theriot. The defendant admitted to others that he arranged for the aggravated battery from jail; the assailant, whom Ms. Theriot had never seen before, had been provided with such details as the location of the victim's workplace, the approximate arrival time of the victim at work in the morning, and a rather accurate description of the victim and/or her automobile. The assailant's apparent knowledge of this information supports the existence of the agreement necessary as an element of the conspiracy in this case.
In addition, Ms. Theriot testified the defendant threatened to throw acid in her face prior to the incident in question. The assailant's actions prove that the noxious substance was deliberately thrown into the victim's face.
The specific intent element of this conspiracy can be inferred not only from the circumstances surrounding the commission of this aggravated battery, but also from the actions taken by the defendant and the assailant to accomplish the battery.
State v. Mayeaux, supra at p. 193.