387 So.2d 473 (1980)
STATE of Florida, Petitioner,
v.
Norman FISCHER, Respondent.
No. 79-223.
District Court of Appeal of Florida, Fifth District.
August 20, 1980.
*474 Jim Smith, Atty. Gen., Tallahassee, and Edwin H. Duff, III, Asst. Atty. Gen., Daytona Beach, for petitioner.
Edward R. Kirkland, Orlando, for respondent.
ORFINGER, Judge.
By a Petition for Writ of Certiorari, we are asked to review a ruling by the trial court granting a motion to suppress an in-court identification. The precise question presented here is apparently one of first impression in Florida, although variations of the problem have arisen before and will occur again.
D.R.S., a female clerk at a neighborhood convenience store (the victim), was seized from behind in the store after a bag was thrown over her head. The store was robbed and she was dragged to the back room where she was sexually assaulted. During the attack she was told, in a voice later described as being disguised, that her assailant had a knife and that she would be killed if she resisted. Following the assault in the store, she was dragged to an automobile and driven a short distance, taken into a building, and there, with her eyes still covered, she was again assaulted several times over a period of approximately four hours.
She later testified that over this prolonged period she was able to feel with her hands features of the attacker's face and head, the shape and feel of his body; she gave a detailed description of all these features. After being released and reporting the incident and her observations to the police, she was shown a number of photographs and from these photographs she identified the defendant as her attacker. He was arrested the following day and thereafter was charged with one count of armed robbery and three counts of sexual battery.
Prior to trial, appellant's counsel orally moved the court to suppress any in-court identification of appellant "... because the identification is tainted by pre-trial identification procedures or the in-court identification of defendant would be based on such highly speculative reasons that the witness, as a matter of law, should be prohibited from making any in-court identification." There was no elaboration of the allegation of pre-trial taint, nor was any contention made to the trial court at the subsequent taking of testimony or argument that the photo-pack used by the police was illegally tainted or unduly suggestive.
The factual setting leading up to the trial court's ruling is not in dispute. The victim never saw her attacker, so she could not identify him by sight. Neither could she *475 identify his voice because she said it was disguised. She could identify her attacker only by her tactile impressions gained during the assault. As to these impressions, she testified:
Q: What, if anything, do you recall at this time about the hair of the person?
A: Kind of soft, stringy-type, short, above the ears, sort of sailor-type.
Q: And what, if anything, do you recall at this time about any facial hair or lack of it?
A: I remember the beard, the mustache, the beard extending from the lower lip to the chin, and the mustache was quite full.
Q: What, if anything, do you remember at this time about the composition of the face?
A: The features of the face, itself?
Q: Could you describe them?
A: Okay. He had fairly large eyes, rather small forehead and very high cheekbones.
Q: How about the eyebrows?
A: Very bushy.
Q: The skin?
A: Smooth.
Q: And do you feel at this time based upon that experience of touch that you would be able or would not be able to identify that person if you saw them again?
A: I would be able to.
She further said that based on these impressions she could testify that the defendant was her assailant.
At the conclusion of the hearing, the trial court granted the motion to suppress the in-court identification, and then sua sponte ruled that any testimony about the photographic identification would also be inadmissible because it, too, was based on tactile impressions rather than sight. The trial judge held that the victim would be able to testify to all her impressions, but that:
Under the circumstances, I guess, the Court is ruling as a matter of law that whatever contact she had with the alleged defendant by feel would not be sufficient or ample opportunity to come in and pick out a photograph and say, "That's him," or see him seated here in the courtroom and say, "By my feel I now use my eyes and say that is him."
The narrow question before us is whether the trial court departed from the essential requirements of law in its pre-trial ruling that neither the in-court identification nor the out-of-court identification of defendant would be admissible because the identification is based on tactile impressions gained by the witness, rather than by sight.
Testimony as to identification is in the nature of opinion evidence and if based on the knowledge of the witness "... the opinion, belief, judgment or impression of an ordinary (non-expert) witness as to the identification of a person or an object is admissible in evidence." Henderson v. State, 94 Fla. 318, 113 So. 689 (1927). Any fact which in the course of ordinary affairs tends to satisfy a person of average judgment as to the identity of an individual is admissible as evidence bearing on that issue, and evidence offered on issue of identification, in order to be admissible, need not in itself constitute clear or irrefutable proof. 29 Am.Jur.2d, Evidence, § 367. The admissibility of testimony does not depend upon its sufficiency, standing alone, to prove the issue. Henderson v. State, supra.
Many prior cases have held that identification testimony is admissible where the witness has not seen the attacker's face. In Simon v. State, 209 So.2d 682 (Fla.3d DCA 1968), intruders into a home wore masks. Although never having seen his face, a witness was permitted to identify the defendant by his build, his walk, his posture, and the shape of his head. The court said:
A witness may give evidence as to a person's identity from any facts that lead him to believe he knows the identity of the person in question and may base his conclusion on size, manner of walk, tone of voice or any mark or peculiarity of the person being identified. 209 So.2d at 683.
*476 In Mack v. State, 54 Fla. 55, 44 So. 706 (1907), a rape victim was attacked from behind and never saw her attacker. She did hear his voice, however, and although she testified that she had never heard his voice prior to the assault, she was permitted to identify the defendant as her attacker after she heard his voice again, as being the same voice that she heard at the time of the attack. Here, too, the evidence was attacked as being too uncertain and unreliable, but the Supreme Court dismissed that objection on the ground that it was competent and admissible evidence, the probative force and value being a matter for the jury.
In Weinshenker v. State, 223 So.2d 561 (Fla.3d DCA 1969), the court recognized the principle that a person may be identified as the perpetrator of a crime solely by means of voice recognition. Relying on Mack v. State, supra, it held that a witness may be permitted to identify an accused solely from having heard his voice, and that such identification is direct and positive proof of a fact, the probative value of which was a question for the jury.
Thus, we observe that in mask cases where the facial features of the attacker are covered, and in voice identification cases where the witness never sees the attacker the witness is permitted, based on his or her observations or perception, to identify the alleged attacker.
It would thus appear that the testimony of the victim identifying her attacker would be admissible under the circumstances of this case. What probative value the testimony has is for the jury. We recognize the dangers inherent in eye-witness identification under even more favorable circumstances than we find here. The Supreme Court of the United States has pointedly called attention to problems inherent in such identifications, viz:
The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: "What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent  not due to the brutalities of ancient criminal procedure. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, at 1933, 18 L.Ed.2d 1149.
In a case the following year, the United States Supreme Court discussed identification procedures and elaborated on the rules set forth in Wade and other cases[1], again recognizing that even in the most correct photographic identification procedure these is some danger that the witness may make an incorrect identification, but because this procedure is a widely used and effective tool in law enforcement,
We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, at 971, 19 L.Ed.2d 1247.
Except for the general allegation made in the trial court that the pre-trial identification procedure was tainted, a point which was never further discussed, there is no contention before us that the pre-trial identification was so suggestive as to present "a very substantial likelihood of irreparable misidentification," Simmons v. United States, supra. Neither was this issue presented to or addressed by the trial court. The trial court ruled only that the victim's *477 tactile impressions could not be translated into visual observations which would permit the witness to point to the defendant as her attacker.
We see no difference between such identification in the instant case and in a case where the victim has only heard the attacker's voice, and says at trial "That's the man." In either case, the witness expresses an admissible opinion based on personal perception. Without giving a witness this opportunity, the witness' perceptions would hang in limbo. There would be no connection between those perceptions and the defendant by the only person who has that knowledge  the witness  and the jury would be left to guess at the connection.
In this case, the witness was no casual observer, but rather was the victim of one of the most personally humiliating of all crimes. In the nature of the crime, there are rarely witnesses to a rape other than the victim, who often has a limited opportunity for observation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. While the basis for the witness' opinion is necessarily limited, it is not for that reason alone inadmissible.
This witness had ample opportunity to investigate the features of her attacker, as well as his general body build. The specificity and detail of her description point to a determined effort to gain perception as to her attacker's identity. Upon confrontation with the defendant, the witness demonstrated a high level of certainty that he was the perpetrator, and her conviction has not wavered. Under these circumstances, her opinion should be offered to the jury to evaluate as they see fit. See Neil v. Biggers, 93 S.Ct. at 382.
This discussion applies both to the out-of-court identification and the in-court identification. In suppressing the proposed identification testimony of the victim, the trial court departed from the essential requirements of law, so the order is quashed and this cause is remanded to the trial court for further proceedings consistent herewith.
ORDER QUASHED and REMANDED.
DAUKSCH, C.J., and COBB, J., concur.
NOTES
[1] E.g., Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 16 L.Ed.2d 1014, which with Wade and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, had involved the basic issue of pre-trial identification of the defendant in the absence of counsel.