JiNESTOR L. CURRAULT, Jr., Judge Pro Tem.
The defendant, Kenny Westmoreland, appeals his conviction of sale of a minor child and urges one assignment of error. For the following reasons, we conditionally affirm his conviction and sentence and remand the matter for further proceedings.
The Jefferson Parish District Attorney filed a bill of information charging Kenny Westmoreland, along with Barbara C. Dalton and Michael A. Giarratano, with violating LSA-R.S. 14:286, sale of minor child. At the arraignment, the defendant pled not guilty. Following a bench trial on December 8,1997, the court found Westmoreland and his co-defendants guilty as charged. Westmore-land was subsequently sentenced to serve two years in the parish prison; however, the court suspended the sentence and placed the defendant on two years of active probation with special conditions. Westmoreland filed a timely motion for appeal, which the trial judge granted.
JaFACTS
Shortly after midnight on June 11, 1997, Lieutenant Carl Walsdorf and Deputy Gerald Trahan of the Jefferson Parish Sheriffs Office were dispatched to the home of co-defendants Michael Giarratano and Barbara Dalton in response to a possible kidnapping of a child. Lieutenant Walsdorf testified at trial that the parents, Michael Giarratano and Barbara Dalton, told him that the defendant had taken their 11 month-old son, Michael, Jr., to his home in St. Charles Parish. Lieutenant Walsdorf immediately went to West-moreland’s residence, secured the child, and placed the defendant under arrest. After being advised of his Miranda rights, West-moreland told Lieutenant Walsdorf that he and his wife were watching the baby.
Meanwhile, Giarratano and Dalton related a different account of the events to Deputy Trahan after the deputy told them that Westmoreland would likely be arrested for kidnapping. Giarratano and Dalton told Deputy Trahan that they were packing their belongings and were moving to Texas that night. They said that they owed Westmore-land $500.00 because he had repaired their truck’s engine. The couple told Deputy Tra-han that Westmoreland learned of their impending move, and came to their home earlier that night because he wanted the money. Giarratano said that when he told Westmore-land that he could not give him the money, Westmoreland threatened to remove the engine from the truck. When Giarratano told Westmoreland that he had to keep the engine, Westmoreland requested that Dalton and the child stay at his house until he was repaid. Deputy Trahan testified that Dalton said that' she didn’t want to stay at West-moreland’sjjjhome. The deputy further testified that Dalton told him that she and Giar-ratano had agreed to allow the child to stay with Westmoreland as “collateral,” and that the child would be returned upon the defendant’s receipt of the $500.00.
At trial, Giarratano, Dalton, and West-moreland, as well as other defense witnesses, presented yet another account of the events. Giarratano testified that he was the father of two children, Lyle, and Michael Jr., the 11 month-old child. Mr. Giarratano recalled that on the night of June 11, 1997, he and Ms. Dalton, his live-in girlfriend, were packing to move to Texas. He told the court that he owed Westmoreland’s brother $500.00 for a truck engine, and that on the night of June 11, Westmoreland came over “to see what kind of collection he could make for that matter.” Giarratano testified that West-moreland was accompanied by his wife, Beth Westmoreland, and two friends, Edward and Martha Winn. Giarrantano further testified that he had known Kenny Westmoreland for 4 years, and that the Westmorelands were the godparents of Michael, Jr.
Giarratano stated that he and Westmore-land arranged to have his family move in with the Westmorelands for one week. During that time, Giarratano would work with *953 Westmoreland in his shop to pay off the debt. He further testified that because Michael, Jr. had a cold, he and Dalton decided to let the Westmorelands babysit Michael, Jr. at the Westmoreland home while he and Dalton loaded their truck. He denied using Michael, Jr. as collateral and explained that there was no need to use the child for collateral, because several thousand dollars worth of his tools were at ^Westmoreland’s home. Giarratano also denied telling the police that Westmoreland kidnapped Michael, Jr.
Barbara Dalton corroborated Giarratano’s testimony. She testified that she called 911 and told the operator that she had a non-emergency situation. Dalton explained to the court that her father had told her that the only way that Westmoreland could take the truck was by way of a mechanic’s lien. She called 911 to ask what would happen to the truck if they drove it out of Louisiana. Dalton testified that she tried to tell the officers that Westmoreland was babysitting her son, but that they would not listen. Finally, Dalton testified that she did not believe that she was giving the child to the defendant as collateral.
Beth Westmoreland, the defendant’s wife, testified that on June 11, 1997, she and her husband and two friends went to the Giarra-tano home because they had learned that Giarratano and Dalton were moving to Texas and wanted to ask Giarratano about the debt. Mrs. Westmoreland testified that she and her husband took Michael, Jr. home with them to babysit and stated that there was never any discussion about using the baby as collateral. Mrs. Westmoreland testified that she recalled that Giarratano suggested that his family live at the Westmoreland’s house until the debt was paid off. She testified that neither Giarratano nor Dalton had any objections to the Westmorelands taking the baby home with them.
Edward Winn testified that on June 11, 1997, he told Westmoreland that Giarratano was moving to Texas. He told the court that he and his wife went with the Westmorelands to Giarratano’s home that evening. He |5testified that the defendant went to Giarra-tano’s home to discuss the debt. Winn recalled a conversation about Giarratano’s “working off’ the debt.
Kenny Westmoreland testified on his own behalf. He told the court that he went to Michael Giarratano’s house as a friend and also to find out about the money that Giarra-tano owed to his brother. He testified that he and Giarratano had agreed that Giarrata-no would stay at his house and would work with him at his mechanic shop to earn the money to repay Westmoreland’s brother. The defendant told the court that although the child went home with him and his wife that evening, he never told Giarratano that he would hold the child for collateral. He further told the court that he had not received any money from Giarratano since June 11, 1997, and that he had never discussed a mechanic’s lien with either Giarrata-no or Dalton.
SUFFICIENCY OF THE EVIDENCE
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and was adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). Under the Jackson standard, the reviewing court must determine whether, viewing the evidence, direct and circumstantial, in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Hawkins, 96-0766, p. 7 (La.1/14/97), 688 So.2d 473, 479; State v. Snyder, 97-226, p. 12 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082, 1088.
The defendant was charged with violating LSA-R.S. 14:286, by receiving a minor child for value as collateral for a loan. LSA-R.S. 14:286 provides in pertinent part:
Except as provided by law, it shall be unlawful for any person to sell or surrender a minor child to another person for money or anything of value, or to receive a minor child for such payment of money or anything of value.
The defendant argues that there was no evidence to show that he received the child in *954 exchange for anything of value. Because the sufficiency of the evidence in this case turns on the trial judge’s determination of the credibility of the witnesses, we will address that issue before addressing the defendant’s contention.
The trial judge in this case was required to evaluate testimony that supported both the state’s and the defendant’s theories of the ease. The defendant contended that he did not receive the minor child for “anything of value.” As support for this position, West-moreland, his co-defendants, and the other defense witness, testified that there was no intention to use the child as collateral or security for payment of the debt. The state, on the other hand, contended that Westmore-land received the minor child for something of value. In support of this position, the state presented the testimony of Detective Trahan. The deputy stated that Giarratano and Dalton told him they had agreed to allow their 11 month-old son to stay with West-moreland as “collateral” for the $500.00 debt.
|7It is well-settled that where there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact. State v. Price, 94-214, p. 7 (La.App. 5 Cir. 1/31/95), 650 So.2d 360, 363. The credibility of witnesses will not be reweighed on appeal. State v. Bordenave, 95-2328, p. 2 (La.4/26/96), 678 So.2d 19, 20; State v. Rowan, 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052. Here, the trial judge apparently believed the testimony of the state’s witnesses and rejected the testimony of the defendant’s witnesses and his credibility determinations will not be reweighed on appeal.
We now turn to the defendant’s claim that he did not receive the child in exchange for “anything of value.” LSA-R.S. 14:2(2) defines “anything of value” as follows:
‘Anything of value’ must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private, and including transportation, telephone and telegraph services, or any other service available for hire. It must be construed in the broad popular sense of the phrase, not necessarily as synonymous with the traditional legal term ‘property.’ In all cases involving shoplifting the term Value’ is the actual retail price of the property at the time of the offense.
According to the Reporter’s Comment following this statute, “it is extremely important that [it] be taken to include as much as possible. [It has] been used in place of long enumerations in many articles, and only by an extensive interpretation will [its] purpose be served.” In this case, Dalton and Giarra-tano in effect “pledged” their minor child to Westmoreland as security for the debt Giar-ratano owed to Westmoreland’s |8brother. By receiving the child, Westmoreland obtained the right to enforce payment of this debt. Clearly, this right falls within the definition of “anything of value.” Accordingly, after viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that the defendant received a minor child for “anything of value.”
ERROR PATENT REVIEW
We have reviewed the record for error patent according to LSA-C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990), and State v. Godejohn, 425 So.2d 750 (La.1983). The state notes as a patent error that the record does not contain a waiver of the right to trial by jury. The defendant has not raised this issue as an assignment of error on appeal. However, defendant’s appellate counsel, who was also his trial counsel, asserts in the appellate brief that counsel waived a jury trial at a pretrial conference with Judge Hand. The state further asserts that it has requested the court reporter to provide all transcripts on the issue of the jury waiver, but that no such transcripts have been found. Under these facts and in light of the absence of a jury waiver, the state requests this Court to remand the matter to the district court for an evidentiary hearing to determine whether the defendant knowingly and intelligently waived the right to a jury trial.
*955 We agree that the record does not contain such a waiver. The Louisiana Constitution Article 1, § 17 and Louisiana Code of Criminal Procedure article 782 provide that a case in which the punishment may be 1 gconfinement at hard labor shall be tried before a jury composed of six persons. While the right to a jury trial may be waived in a non-capital case, these statutes require that defendant must “knowingly and intelligently” waive this right. See LSA-C.Cr.P. art. 780. Waiver of this right is never presumed. State v. McCarroll, 387 So.2d 475, 480 (La.1976); State v. Jackson, 95-423, p. 4 (La.App. 5 Cir. 11/15/95), 665 So.2d 467, 468.
Considering that a violation of LSA-R.S. 14:286 is punishable by a term of imprisonment with or without hard labor for not more than five years, the defendant was entitled to a trial by a jury of six persons. However, the defendant was tried by a judge, and the record is devoid of any evidence regarding the defendant’s waiver of his right to a jury trial.
We recently addressed the issue of the absence of a jury trial waiver in State v. Stoltz, 98-235 (La.App. 5 Cir. 8/25/98), 717 So.2d. 1243. We remanded the ease to the district court for an evidentiary hearing to determine whether the defendant knowingly waived his right to a jury trial, and we stated as follows:
In addressing the issue regarding the absence of a jury trial waiver in State v. James, 94-720 (La.App. 5 Cir. 5/30/95), 656 So.2d 746, this court, with one judge dissenting, remanded the case for an eviden-tiary hearing to determine whether the defendant knowingly and intelligently waived his right to trial by jury. In so remanding, the majority stated, ‘Under the present circumstances, wherein James [the defendant] had competent counsel and was tried without objection by a judge, we believe that the interests of justice are better served by a remand instead of reversals.’ State v. James, 94-720, p. 2, 656 So.2d at 746.
| ipRecently, in State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963, the Louisiana Supreme Court, citing this court’s decision in James, also chose to remand for a similar evidentiary hearing; thus, the Louisiana Supreme Court has apparently approved the procedure of remanding for an evidentiary hearing.
State v. Stoltz, 98-235, p. 7, 717 So.2d 1243.
Accordingly, we remand the case to the district court for an evidentiary hearing to determine whether the defendant knowingly and intelligently waived his right to a jury trial. If the evidence shows that the defendant did not knowingly and intelligently waive his right to a jury trial, the district court must set aside the defendant’s conviction and sentence and grant him a new trial. However, if the evidence shows that a waiver was properly made, the defendant may appeal that ruling.
We also note that the trial court erred in failing to advise the defendant of the applicable prescriptive period for post-conviction relief as mandated by LSA-C.Cr.P. art. 930.8 C. Accordingly, we instruct the trial court to send the appropriate written notice to defendant regarding the prescriptive period for post-conviction relief and to file written proof in the record that defendant received the notice. State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289.
We further note an error in the defendant’s commitment. While the transcript reflects that the trial judge found the defendant guilty as charged, the commitment reflects that the defendant entered a plea of guilty. Generally, where there is a discrepancy between the minute entry and the transcript, the transcript should prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Haynes, 96-84, p. 4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1120, 1123. Therefore, we do hereby order that the commitment be amended to delete all references that the defendant entered a guilty plea.
DECREE
Therefore, after a review of the law and evidence, the defendant’s conviction and sentence are hereby conditionally affirmed. The case is remanded to the district court for an evidentiary hearing and for further proceedings in accordance with this opinion.
*956 CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED WITH INSTRUCTIONS.