763 So.2d 765 (2000)
STATE of Louisiana
v.
William VORTISCH.
No. 00-KA-67.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2000.
*766 James A. Williams, Michelle Hesni, Kevin V. Boshea, New Orleans, Louisiana, Attorneys for Appellant William Vortisch.
Paul D. Connick, Jr., District Attorney, Ellen S. FantaciAttorney of Record on Appeal, Assistant District Attorney, Research & Appeals, Terry M. Boudreaux, Allison MonihanTrial Attorney, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Defendant, William F. Vortisch, appeals from his conviction of simple burglary and his sentence as a habitual offender to six years imprisonment at hard labor. For the reasons which follow, we remand the case to the trial court for an evidentiary hearing to determine if Defendant knowingly and intelligently waived his right to a jury trial.
In the early morning hours on August 7, 1998, Officer Steven Keller of the Kenner Police Department was on patrol when he heard a burglary alarm from the Potato King. Officer Keller proceeded to the Potato *767 King, a fast-food restaurant on Williams Boulevard in Kenner, where he saw that a part of the lower glass of the front door was missing, but he observed no one.
Crime Scene Technician William Sclafini also reported to the scene. He said that the hole cut in the bottom of the plexiglass door was large enough through which a person could crawl. Inside the restaurant, he saw a small box and papers scattered on the floor, as if someone had been looking for something. He also observed that the cash register was open.
Arnold Powell (Powell), the owner and manager of the Potato King, arrived after being notified by the security system that motion had been detected inside. He said that the small box was normally kept underneath a table and contained the papers that were strewn about the floor. Powell explained that employees customarily left the empty cash register open to discourage theft.
Technician Sclafini dusted for fingerprints from the outer and inner areas of the hole in the plexiglass door, as well as on the small box. While he was unsuccessful in lifting fingerprints from the box, he recovered several latent prints from the area around the hole in the door. These fingerprints were transferred to six slides. Officer Alan Abadie of the Kenner Police Department used the Automated Fingerprint Identification System (A.F.I.S.) to match four of the slides to a fingerprint of the Defendant, which was kept on file in the A.F.I.S.
Detective Keith Pepitone of the Kenner Police Department was notified about the matching fingerprints and obtained a warrant for the Defendant's arrest. That same day, August 7, 1998, the Defendant was arrested and gave a statement to Detective Pepitone. According to the detective, after Defendant waived his Miranda rights,[1] he related that he was in the business of installing security systems. However, Defendant told him that he had never been in the Potato King, either for business reasons or as a restaurant patron.
The Jefferson Parish District Attorney charged the Defendant by bill of information with simple burglary, a violation of La. R.S. 14:62. The Defendant pled not guilty at arraignment. After a bench trial on May 14, 1999, the trial judge found the Defendant guilty as charged.
On May 25, 1999, the judge sentenced the Defendant to serve six years imprisonment at hard labor. After a hearing on December 15, 1999, the trial judge found the Defendant to be a habitual offender, vacated the original sentence, and imposed an enhanced sentence of six years imprisonment at hard labor. The Defendant thereafter filed a motion for appeal, which the trial judge granted.
On appeal Defendant assigns four errors, which includes the argument that the evidence was insufficient and that the record does not contain a valid waiver of Defendant's right to a trial by jury. Although we find merit in Defendant's latter argument and remand for an evidentiary hearing on that point, we nevertheless first consider Defendant's assignment of error regarding the insufficiency of the evidence. State v. Lamothe, 98-2056 (La.11/25/98), 722 So.2d 987.
Defendant contends that the State's evidence presented at trial is legally insufficient to support his simple burglary conviction because the State failed to prove beyond a reasonable doubt that he was the perpetrator of the crime.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable *768 doubt. See also, State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1292-1293; State v. Holmes, 98-490 (La.App. 5th Cir. 3/10/99), 735 So.2d 687, 690. The State is also required to negate any reasonable probability of misidentification in order to meet its burden of proof. State v. Mayer, 98-1311 (La.App. 5th Cir. 9/28/99), 743 So.2d 304, 307.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La. 1984); State v. Wooten, 99-181 (La.App. 5th Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 1999-2057 (La.1/24/00), 753 So.2d 208. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Wooten, 99-181 at p. 4, 738 So.2d at 675.
In the context of this case, to convict the Defendant of simple burglary, under La. R.S. 14:62, the State must prove beyond a reasonable doubt that the Defendant entered the Potato King without authorization and had the specific intent to commit a felony or theft therein. See, State v. Ewens, 98-1096 (La.App. 5th Cir. 3/30/99), 735 So.2d 89, 93, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179.
The element of unauthorized entry was established by Powell, who testified that he did not know the Defendant and had not given him permission to enter the Potato King after hours. Likewise, the evidence established that the person who entered without authorization had the specific intent to commit a theft inside the business. The trial judge's reasons for judgment indicate that he inferred intent from the physical damage to the door, that the interior of the business residence was in disarray, as well as from the papers customarily kept in the file box being scattered all over the floor. Displacement of the victim's possessions may be indicative of the specific intent to commit a theft under La. R.S. 14:62. State v. Tran, 97-640 (La.App. 5th Cir. 3/11/98), 709 So.2d 311, 317. See also, State v. Richardson, 547 So.2d 749, 752 (La.App. 4th Cir.1989).
Thus, the only issue before the court and the focus of the Defendant's argument in this assignment of error is on the lack of evidence that he was the perpetrator. Defendant contends that the evidence did not exclude every reasonable hypothesis of innocence, since the State's expert could not establish when his fingerprints were placed on the door.
Detective Pepitone testified that after arresting Defendant and advising him of his rights, Defendant told him that he had never been in the Potato King, either for business reasons or as a restaurant patron.
The Defendant, however, testified at trial that he told Detective Pepitone that he had been in the Potato King several times to play video poker. According to the Defendant, his fingerprints at the crime scene were explained by his entering and exiting the Potato King on the occasions when he went to play video poker. The Defendant also admitted that he might have told Detective Pepitone he had never been to the Potato King. But, he explained that he did not recognize that location as the place where he had played video poker when he was questioned by the detective. Finally, the Defendant also denied that he broke into the Potato King and attempted to establish an alibi defense through his brother.
Gerald Jacobs (Jacobs), the Defendant's brother, testified for the defense that he accompanied his brother to the Potato King to play video poker. Jacobs stated that he was living with the Defendant in August of 1998 and resided there for about three weeks. While Jacobs did not know *769 the specific date of the burglary, he claimed that he would have known if his brother had left the apartment in the early hours of the morning. Jacobs explained that he and his brother shared the use of the key to the apartment and neither of them ever left the apartment without telling the other, to avoid locking the other out of the apartment.
At trial, Officer Sclafini detailed the precise areas around the entry point in the door from which he lifted the latent fingerprints. Officer Sclafini lifted the fingerprints on slides one and four from the bottom of the inside of the door, and the fingerprints on slides five and six from the bottom of the outside of the door. Although Officer Abadie admitted that he could not tell how long the fingerprints were on the door, he said that he was absolutely certain that the fingerprints on these slides matched the Defendant's fingerprints.[2]
The Defendant asserts that, since his fingerprints could have been placed on the door on one or more of the occasions when he played video poker at the Potato King, the evidence admitted did not exclude this reasonable hypothesis of his innocence. We disagree.
As observed by the trial judge in his oral reasons, the latent fingerprints matching the Defendant's were recovered from areas around the hole cut in the plexiglass. According to the trial judge, the Defendant's theory did not provide a reasonable explanation for the presence of his fingerprints in the areas where the latent prints were recovered.
The trial judge, likewise, determined that Detective Pepitone was more credible than the Defendant, and also found that the Defendant's brother's testimony was not helpful in establishing an alibi for the Defendant.
Where there is conflicting testimony as to factual matters, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be reweighed on appeal. State v. Richards, 97-1182 (La.App. 5th Cir. 4/15/98), 713 So.2d 514, 517, writ denied, 98-1452 (La.10/9/98), 726 So.2d 27.
Based on the foregoing, we find that the State's evidence at trial was sufficient to exclude every reasonable hypothesis of innocence and that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the Defendant committed the offense of simple burglary. This assignment of error lacks merit.
The Defendant further asserts that the record does not reflect that he waived his right to a jury trial. Absent evidence that he knowingly and intelligently waived his right to a trial by jury, Defendant argues that the conviction should be set aside and the case remanded for a new trial.
The State concedes that the record does not evidence a knowing and intelligent waiver by the Defendant of his right to trial by jury. However, the State argues that, rather than reversing the conviction, the court should remand the matter for an evidentiary hearing, to determine whether the Defendant knowingly and intelligently waived his right to a jury trial.
The Louisiana Constitution Article I, § 17 and Louisiana Code of Criminal Procedure Article 782 provide that a case in which the punishment may be confinement at hard labor shall be tried before a jury composed of six persons. While the right to a jury trial may be waived in a non-capital case, these statutes require *770 that defendant must "knowingly and intelligently" waive this right. See, La.C.Cr.P. art. 780. Waiver of this right is never presumed. State v. McCarroll, 337 So.2d 475, 480 (La.1976); State v. Jackson, 95-423 (La.App. 5th Cir. 11/15/95), 665 So.2d 467, 468.
Considering that simple burglary is punishable by a term of imprisonment with or without hard labor for not more than 12 years, the Defendant was entitled to a trial by a jury of six persons. However, the Defendant was tried by a judge, and the record is devoid of any evidence regarding the Defendant's waiver of his right to a jury trial.
Confronted with a similar factual situation in State v. James, 94-720 (La.App. 5th Cir. 5/30/95), 656 So.2d 746, this Court, with one judge dissenting, remanded the case for an evidentiary hearing to determine whether the defendant knowingly and intelligently waived his right to trial by jury.[3]
Following James, the Louisiana Supreme Court, in State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963, citing this Court's decision in James with approval, remanded that case for a similar evidentiary hearing. This procedure of remanding for an evidentiary hearing has been followed by this Court since Nanlal. See, State v. Pierre, 98-1123 (La.App. 5th Cir. 4/14/99), 733 So.2d 674, 679; State v. Herrera, 98-677 (La.App. 5th Cir. 2/10/99), 729 So.2d 75, 79; State v. Brual, 98-657 (La. App. 5th Cir. 1/26/99), 726 So.2d 1112, 1114; State v. Westmoreland, 98-437 (La.App. 5th Cir. 10/14/98), 721 So.2d 951, 955; State v. Stoltz, 98-235 (La.App. 5th Cir. 8/25/98), 717 So.2d 1243, 1246-1247.
Therefore, in the absence of record evidence that the Defendant knowingly and intelligently waived his right to a jury trial, we conclude that this case must be remanded to the trial court for an evidentiary hearing on that point.
Accordingly, for the reasons stated above, we find that there was sufficient evidence to support Defendant's conviction and we order this case remanded to the trial court for an evidentiary hearing to determine whether the Defendant knowingly and intelligently waived his right to a jury trial. If the evidence shows that the Defendant did not knowingly and intelligently waive his right to a jury trial, the trial court is instructed to set aside the Defendant's conviction and sentence and grant him a new trial. If, however, the trial judge determines that the waiver was properly made, the appeal should be transferred back to this Court for review of that determination and any remaining assignments of error not covered in this opinion. James, 94-720 at p. 2, 656 So.2d at 746.
REMANDED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Officer Abadie testified that the fingerprints on slides two and three were not of a suitable quality to make a comparison.
[3] After the evidentiary hearing was held in James, the trial court determined that the defendant had waived his right to a jury trial. This Court, however, recently reversed and remanded for a new trial on the ground that the evidence did not reflect a valid jury waiver. See, State v. James, 99-KA-1047 (La.App. 5th Cir. 1/25/00), 751 So.2d 419, a copy of which is attached.