781 So.2d 834 (2001)
STATE of Louisiana
v.
Charles HENSLEY.
No. 00-KA-1448.
Court of Appeal of Louisiana, Fifth Circuit.
February 28, 2001.
*837 Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux, Joan S. Benge, Allison Monahan, Assistant District Attorneys, Gretna, Counsel for the State of Louisiana.
Margaret S. Sollars, Thibodaux, Counsel for defendant-appellant.
Court composed of Judges SOL GOTHARD, CLARENCE E. McMANUS and PATRICK M. SCHOTT, Pro Tempore.
McMANUS, Judge.
Charles Hensley here appeals his conviction for the second degree murder of Raymond Bright. For the reasons below, we affirm the conviction and sentence, but remand the matter for correction of patent errors.

STATEMENT OF THE CASE
Defendant, Charles Hensley, was indicted by a grand jury on March 11, 1999, for second degree murder in violation of LSA-R.S. 14:30.1. He pled not guilty and proceeded to trial on August 30, 1999. After a two-day trial, a 12-person jury found him guilty as charged by a vote of 10-2. He was subsequently sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.

FACTS
Sometime between December 24, 1998, and January 2, 1999, Raymond Bright was murdered at his home on Acres Road in Marrero. The victim's body was discovered on January 2, 1999, by the victim's brother, Isaac Bright, and his niece, who went to the victim's house after the victim failed to show up at Isaac's house for Christmas. The victim was found lying on his stomach on the floor with his hands tied behind his back, his feet bound and a white plastic bag over his head. His hands and feet were tied together, hog-style, with an electrical cord. The autopsy gave asphyxiation as the cause of death and further indicated that the victim had cocaine in his bloodstream when he died.
During the murder investigation, Detective John Drury learned the "word on the street" was that Defendant was responsible for the murder. Also during the investigation officers interviewed Defendant's niece, Laura Hensley, who revealed that Defendant had confessed to the crime. Based on this information, Defendant was arrested and charged with second degree murder.
At trial, William Tarwater, who shared a cellblock with Defendant for two weeks shortly after Defendant was arrested, testified that Defendant admitted to killing Raymond Bright. Defendant told Mr. Tarwater that he and the victim were smoking crack cocaine when they started arguing over money. When the victim refused to give Defendant money, Defendant held a gun to the victim, tied him up in a chair with an appliance cord, and put a plastic bag over his head.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant asserts there was insufficient evidence to convict him of second *838 degree murder on two grounds.[1] First, Defendant maintains that Laura Hensley's prior statement was improperly admitted into evidence and was impermissibly used as substantive evidence. Second, Defendant contends there was no evidence that he had specific intent to kill. Defendant further argues that the testimony of Laura Hensley and William Tarwater was not credible as both were convicted felons who clearly put their interests first.
When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence the trial court may have erroneously admitted. State v. Hearold, 603 So.2d 731 (La.1992); State v. Mayeux, 94-105 (La.App. 5 Cir. 6/28/94), 639 So.2d 828. If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. However, if the appellate court finds that the totality of the evidence was sufficient to support the defendant's conviction, it must then determine whether the trial court erred in admitting the questioned evidence and, if so, whether the court's error requires a reversal of the conviction or was harmless. State v. Alexis, 98-1145 (La.App. 5 Cir. 6/1/99), 738 So.2d 57, 64, writ denied, 99-1937 (La.10/13/00), 770 So.2d 339.
The constitutional standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is not the function of the appellate court to second-guess the credibility determinations of the trier of fact or to re-weigh the evidence. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Carter, 98-24 (La.App. 5 Cir. 5/27/98), 712 So.2d 701, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444.
Defendant was convicted of second degree murder, which is defined as the killing of a human being when the offender 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of armed robbery, first degree robbery or simple robbery even though he has no intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1(A). The State argued both theories in its opening statement. In particular, the State alleged that Defendant had specific intent to kill the victim based on the manner in which the victim was tied up with a plastic bag over his head. In addition, the State asserted that Defendant, while armed with a gun, went to the victim's house with the intent to rob him.
Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Alexis, supra. The determination of whether the requisite intent is present in a criminal *839 case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Simmons, 98-841 (La.App. 5 Cir. 6/1/99), 738 So.2d 1131, 1134, writ denied, 99-2419 (La.4/20/00), 760 So.2d 333.
The evidence against Defendant consisted mainly of the testimony of Laura Hensley and William Tarwater. Ms. Hensley, who was incarcerated at the time of trial for the distribution of crack cocaine, testified that she and Defendant had a conversation about the murder a couple of days after she learned of the murder. Ms. Hensley initially testified that during this conversation Defendant told her that someone "should have tied [Bright's] ass up" because Bright owed Defendant money. Thereafter, the witness was confronted with a prior inconsistent statement in which she had stated Defendant told her that he tied the victim up and left him after Defendant and the victim had argued over money. After being impeached by the prior inconsistent statement, Ms. Hensley admitted the truth of the statement, and testified that Defendant told her that he had tied the victim up and left him.
William Tarwater, Defendant's cellblock mate for two weeks, testified that Defendant confided that he held a gun to the victim, tied him up in a chair with an appliance cord and put a plastic bag over the victim's head after the victim refused to give him money. According to Mr. Tarwater, Defendant stated that he wanted money from the victim for more crack cocaine. Defendant knew that the victim received a check every month and assumed the victim had cashed it. Defendant admitted to Mr. Tarwater that he did not find any money.
It was established through the testimony of the payroll clerk at the victim's place of employment that the victim had been paid $333.62 on December 23, 1998. Although no money was found in the victim's home, $110.00 was found between the victim's layers of socks during the autopsy.
Under the first theory, the evidence supports a finding that Defendant had specific intent to kill or inflict great bodily harm. Defendant hog-tied the victim and placed a plastic bag over his head with the handles of the bag tied around his neck. Defendant then left the victim to die from suffocation, which he ultimately did.
In State v. Cepriano, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, this Court found defendant had specific intent to kill when, among other things, the defendant placed a plastic bag tightly over the victim's head after the victim was unconscious. In Cepriano, the defendant had also raped and choked the victim, dragged a serrated knife across her neck and wrapped a wire around her neck after she was unconscious. This Court concluded that all of these factors were sufficient to show specific intent.
Though these other factors are not present here, suffocation causes death even in the absence of any other injuries. Defendant abandoned the victim, bound hand and foot, helpless to remove a plastic bag secured over his head. Defendant plainly intended Bright's death to "follow" this act.
The evidence also supports a conviction for second degree felony murder, the second theory. Felony-murder requires the State to show that a defendant was engaged in the perpetration or attempted perpetration of armed robbery, first degree robbery or simple robbery at the time of the killing, though the defendant has no specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1(A)(2)(a). Armed robbery is defined as the "taking of anything of value belonging to another from the person of another or *840 that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." LSA-R.S. 14:64. First degree robbery is defined as the "taking of anything of value... by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." LSA-R.S. 14:64.1. Simple robbery is defined as the same thing except it does not require that the defendant be armed with a dangerous weapon. LSA-R.S. 14:65. The mere fact nothing was taken from the victim during a robbery does not prevent a second degree murder conviction. State v. Hill, 98-1087 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, writ denied, 99-2848 (La.3/24/00), 758 So.2d 147.
As discussed above, the testimony of William Tarwater established that Defendant demanded the victim's money while armed with a gun. Thus, the evidence clearly supports the elements of armed robbery. The fact Defendant ultimately did not succeed in taking any money does not negate his intent to take the victim's money.
Defendant argues the testimony of Mr. Tarwater was not credible since he was a convicted felon. Mr. Tarwater had two felony convictions in Illinois and Wisconsin for unauthorized use of a motor vehicle and residential burglary. He was on parole at the time of his arrest in Kenner. Detective Drury testified that Mr. Tarwater provided information about the murder that had not been released to the public and would have only been known by the person who committed the murder. This information included the facts that the victim was tied with an electrical cord, the victim was placed in a chair when he was tied up, the victim had been smoking crack cocaine, and the perpetrator had been looking for money.
The jury obviously believed Mr. Tarwater's testimony despite his prior felony convictions. It is not the function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses to overturn a factual determination of guilt. A jury may accept or reject, in whole or in part, the testimony of any witness. State v. Hopson, 98-943 (La.App. 5 Cir. 3/30/99), 735 So.2d 81, 85, writ denied, 99-1315 (La.11/12/99), 749 So.2d 650.
We note, finally, that Defendant's characterizations of Hensley's and Tarwater's statements as "self-serving" are completely unwarranted. There is no evidence whatever that either party was induced to make the statements implicating Defendant or that either received any benefit for having made them. Assertions that this factor would render the statements unreliable are completely unfounded.
Based on the totality of the evidence, a rational trier of fact could have concluded beyond a reasonable doubt that Defendant committed specific intent second degree murder and/or second degree felony murder. Thus, Defendant is not entitled to an acquittal under Jackson v. Virginia, supra.
Having made this determination, we must next consider whether the trial court erred in admitting into evidence Hensley's prior statement. Generally, an out-of-court statement is inadmissible hearsay. LSA-C.E. art. 802. However, LSA-C.E. art. 607(D)(2) allows a prior inconsistent statement to be admitted for the limited purpose of attacking the credibility of a witness. A prior inconsistent statement of a witness cannot be used as substantive evidence of a defendant's guilt. State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065, 1069; State v. Washington, 98-69 (La.App. 5 Cir. 1/26/99), 727 So.2d 673.
*841 When a party seeks to introduce extrinsic evidence such as a prior inconsistent statement to impeach a witness, a distinct foundation must be laid. The witness's attention must be fairly directed to the particular statement and he must be given the opportunity to admit the "fact" of his prior inconsistent statement. LSA-C.E. art. 613; State v. Jarvis, 97-1174 (La.App. 5 Cir. 4/9/98), 710 So.2d 831, 835, writ denied, 98-2219 (La.1/8/99), 734 So.2d 1222.
If the witness admits giving a prior inconsistent statement, the statement itself or other extrinsic evidence of the statement is inadmissible. The rationale is that when a witness admits to the prior inconsistent statement, he accomplishes his own impeachment and extrinsic evidence of the "fact" of the prior inconsistent statement is not necessary. However, if the witness denies giving a prior inconsistent statement or if the witness fails to distinctly admit the statement, extrinsic evidence of the statement is admissible. State v. Mayeux, 94-105 (La.App. 5 Cir. 6/28/94), 639 So.2d 828, 834. Nonetheless, a prior inconsistent statement may be excluded if the probative value of the statement as to the credibility of the witness's trial testimony is outweighed by unfair prejudice that may result from the jury's potentially improper use of the evidence. Cousin, supra at 1071.
Prior to trial on January 13, 1999, Laura Hensley gave two statements to the police. Only the first statement is at issue. In her first statement, Ms. Hensley stated that Defendant told her that he and the victim had an argument over money and he tied the victim up and left. However, at trial, Laura Hensley denied that Defendant had ever told her that he tied the victim up and left him. Rather, Ms. Hensley testified that Defendant only commented that someone should have tied the victim up because the victim owed Defendant money.
When confronted about her prior statement, the witness admitted giving a statement but initially denied its contents. It was not until after her taped statement was played to the jury that Ms. Hensley admitted to its contents and admitted the truth of its contents. By initially denying the contents of her prior statement, Ms. Hensley did not impeach herself and the State was forced to use extrinsic evidence of the prior statement to accomplish impeachment. Therefore, the trial court did not err in admitting Ms. Hensley's prior inconsistent statement.[2]
Defendant complains that Ms. Hensley's prior inconsistent statement was improperly used to prove a substantive element of the crime. It is noted that Defendant failed to request any type of limiting instruction regarding the use of the prior inconsistent statement.[3] And, there is no *842 evidence that the jury relied on Hensley's prior inconsistent statement to prove an element of the crime. The substance of the prior inconsistent statement was not crucial to the prosecutions's caseit was merely cumulative of the testimony of William Tarwater, who testified that Defendant told him that he had tied the victim up and left him. Further, at trial Hensley eventually admitted to the truth of the prior statement and testified that Defendant had told her he tied the victim up and left after he and the victim argued over money.
The record before us clearly contains evidence sufficient to support Defendant's conviction; this assignment of error does not require reversal of the conviction.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant next asserts the introduction of three photographs into evidence was highly inflammatory and prejudicial, especially in light of the fact he stipulated to the manner of death and the delayed discovery of the victim's body. Defendant maintains the photographs misrepresented what happened to the victim since they were taken after the body had started to decompose. And, Defendant further argues the photographs were cumulative.
Defendant's argument that the photographs are cumulative was not properly preserved for appeal. At trial, Defendant merely objected to the three photographs on the basis they were prejudicial and outweighed any probative value. At no time did defense counsel assert the photographs were cumulative.
In State v. Hidalgo, 95-319 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188, 1194, this Court found that defendant's contention that two autopsy photographs were cumulative was not properly preserved for appeal when, at trial, defense counsel only objected on the grounds that the photographs were gruesome. Noting that a new basis for an objection may not be raised for the first time on appeal, this Court limited appellate review to the gruesomeness of the photographs and did not address their cumulative nature.
Post-mortem photographs of murder victims at the scene are admissible to prove corpus delicti, for positive identification of the victim, to corroborate other evidence establishing the cause of death, the manner in which death occurred and the location, severity, and number of wounds. State v. Hill, 98-1087 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, 697, writ denied, 99-2848 (La.3/24/00), 758 So.2d 147. The mere fact that a photograph is gruesome does not in and of itself render the photograph inadmissible. The test of admissibility is whether the probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Bibb, 626 So.2d 913, 932 (La.App. 5 Cir.1993). The trial court's admission of an allegedly gruesome photograph will not be overturned on appeal unless its prejudicial effect clearly outweighs its probative value. No error will be found unless the photographs are so gruesome so as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Pittman, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748, 757. At trial, Defendant objected to S-11, which showed the victim lying on his stomach with the plastic bag over his head and some dark fluid on the carpet around his head; S-18, which showed a closer picture of the victim's head with the plastic bag over it and with visible blood on the *843 inside of the bag; and, S-21, which showed the victim's face after the plastic bag had been removed.
Defendant argues these photographs were unnecessary and highly prejudicial because he stipulated that the cause of death was asphyxiation. First, it is noted that a defendant "cannot deprive the State of the moral force of its case by offering to stipulate to what is shown in the photographs." State v. Perry, 502 So.2d 543, 559 (La.1986). Furthermore, the photos have great probative value. Photographs S-11 and S-18 show the manner in which the victim's body was found with the plastic bag over his head and the location of his body. The photos further corroborate testimony regarding the existence and use of a plastic bag. One issue at trial was whether Defendant had specific intent to kill. Pertinent to the issue of specific intent was the way the bag was placed over the victim's head and the way the handles of the bag were tied around the victim's neck. And, photograph S-21 is the only photograph that shows the face of the victim thereby identifying him.
Any possible prejudicial effect of the photographs is plainly outweighed by their probative value; this assignment of error does not require reversal of Defendant's conviction.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990), and we note the following.
The record reflects that Defendant was not advised of the prescriptive period for filing post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. However, the failure of the trial court to inform a defendant of this prescriptive period is not a ground for vacating the sentence. Rather, the remedy is to remand the case with an instruction to the trial court to inform defendant of the two-year prescriptive period by sending written notice to defendant within 10 days after the rendition of the appellate opinion and to file written proof in the record that defendant received such notice. State v. Cordero, 99-44 (La.App. 5 Cir. 6/1/99), 738 So.2d 84, writs denied, 99-1877 and 99-1878 (La.11/24/99), 750 So.2d 981. Therefore, we so instruct the trial court: within 10 days of rendition of this opinion, the trial court shall notify Defendant of the delays provided for filing applications for post conviction relief, and shall place the appropriate notice into the record.
Therefore, for the above reasons, Defendant's conviction and sentence are affirmed, and the matter is remanded solely for the trial court to provide notice to Defendant of the prescriptive period for filing applications for post conviction relief and to file proof of such notice in the record.
CONVICTION AND SENTENCE AFFIRMED; MATTER REMANDED WITH INSTRUCTIONS.
NOTES
[1] Defendant did not file a post verdict motion for acquittal challenging the sufficiency of the evidence pursuant to LSA-C.Cr.P. art. 821. However, such failure does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887 (La.1982).
[2] See State v. Mayeux, 94-105 (La.App. 5 Cir. 6/28/94), 639 So.2d 828, where this Court held that where a witness vacillates and evades questions regarding the substance of a prior statement, the statement was properly admitted to impeach the witness's trial testimony. This Court reasoned that the witness fell short of admitting her prior inconsistent statement and, therefore, never impeached herself through her trial testimony. See also State v. Washington, 98-69 (La.App. 5 Cir. 1/26/99), 727 So.2d 673, where this Court upheld the admission of extrinsic evidence of a witness's prior inconsistent statement where the witness admitted making a prior statement but denied its contents.
[3] When a defendant requests a contemporaneous jury instruction, the trial court must caution the jury, at the time the impeaching evidence is introduced, that the prior inconsistent statement is not substantive proof of guilt. State v. Kaufman, 304 So.2d 300 (La. 1974). Where a defendant does not request the limiting instruction concerning the effect of the prior inconsistent statement, there is no reversible error. State v. Allien, 366 So.2d 1308, 1310 (La.1978).