984 So.2d 847 (2008)
STATE of Louisiana
v.
Mona J. MICELOTTI.
No. 07-KA-808.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 2008.
*849 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Jeffery J. Hand, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Mona MicelottiIn Proper Person, St. Gabriel, Louisiana, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On March 29, 2006, defendant, Mona Micelotti, was charged with simple burglary of an inhabited dwelling and structure pursuant to LSA-R.S. 14:62.2. Defendant pled not guilty at her arraignment and proceeded to trial. Defendant was found guilty as charged. She filed a motion for new trial which was denied. Thereafter, defendant was sentenced to five years at hard labor, with the first year of her sentence to be served without benefit of parole, probation, or suspension of sentence. Defendant, through counsel, timely appealed. Defendant's appellate counsel submitted a brief on her behalf alleging two assignments of error. By letter to this Court filed January 10, 2008, defendant requested to file a pro se brief on her own behalf. On January 14, 2008, this Court granted her request and defendant filed a pro se Brief on February 15, 2008 alleging one assignment of error.

*850 FACTS

Willet Joseph Falcon, III testified at trial that in February 2006 he allowed defendant, Mona Micelotti, and her daughter and co-defendant, Sarah Merwin, to stay at his house located at 616 Oriole Street in Metairie, Louisiana. Falcon had shared crack cocaine with defendant and he met Merwin through defendant. Falcon allowed them to move into his house two days after he met them. Falcon testified that Merwin only brought clothes with her when she moved in. Merwin and Micelotti stayed at Falcon's house for ten days to two weeks. Falcon then asked them to leave because an acquaintance of theirs was selling drugs in his driveway. Micelotti and Merwin took most of their belongings on the day they left and Falcon told them they could return when he was home to retrieve the remaining box of clothing. Falcon testified that Micelloti and Merwin never had a key to his house.
On February 15, 2006, Falcon arrived home with his children. They found the back door of the residence wide open with broken glass on the ground. The children's bikes, stereo, television, DVD-VHS player, and all their DVDs and VHS tapes were taken, as well as the computer Falcon shared with his son. After calling the police, Falcon also noticed two tool boxes were missing. The box of clothes belonging to Micelotti and Merwin was also gone. Falcon had not given Micelotti or Merwin permission to enter his home or to take the items. Falcon described the house as "not necessarily" in disarray. He described the items as "neatly taken." The missing items were never returned. During his testimony, Falcon admitted he was convicted of possession of cocaine in Georgia a year and a half before the robbery of his home.
Falcon's sister, Amber Cancienne, lived across the street from Falcon and knew Falcon had let Micelotti and Merwin stay at his house. She testified at trial that she saw Micelotti and Merwin back a maroon Toyota into Falcon's driveway on February 15, 2006. Cancienne saw both Micelotti and Merwin carry a heavy black trash bag and put it in the trunk of the car. Cancienne thought they were taking more of their things from the house since he had asked them to leave. She didn't think they had a key, so she did not know how they got into Falcon's house. Cancienne also testified that she had not seen a broken window on her brother's house before that day.
Deputy Shenandoah Jones of the Jefferson Parish Sheriff's Office testified that she observed the window of the rear door of Falcon's house had been shattered and a piece of plywood was put in its place. The rear door was the only sign of forced entry. They were unable to get any prints or other forensics since the scene was compromised. Deputy Jones did state that the house did not appear "too ransacked."
Co-defendant Merwin testified at trial that Falcon met her first, not her mother, and he met Micelotti later after he picked up Merwin. Merwin moved into Falcon's house the next day and stayed two weeks. Micelotti also moved into Falcon's house at Merwin's request. Merwin and Micelotti never received a key. Merwin stated she and Micelotti just left the back door open when they left the house. Merwin further testified that the rear window was broken on the second or third day she moved in with Falcon. Merwin testified that on that day, Falcon "[put] on a show" for the police because a man named Terrell was at the house to sell Falcon some crack. Merwin further testified that the police were at the house because Falcon's sister called them to report drug activity. On that day, after Falcon returned to work, Micelotti swept up the glass from the broken window. *851 Falcon put up some plywood when he returned home from work.
Merwin also testified that she and Micelotti became increasingly uncomfortable in Falcon's house because they had to clean the house and buy food for Falcon's children because he spent all of his money on drugs. According to Merwin, this included money Falcon had obtained from pawning his and his children's possession's. Merwin testified that Falcon tried to have a relationship with either she or Micelotti and living at his house became tense and uncomfortable. Therefore, they both decided to leave. Merwin denied that she and Micelotti robbed Falcon's house. She testified that she and defendant took all of their things from Falcon's house at the same time. Merwin did admit that she was arrested for possession of narcotics in Mississippi.
Micelotti now appeals her conviction for simple burglary of an inhabited dwelling and structure alleging one pro se assignment of error and two counseled assignments of error.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In her pro se brief, defendant argues one assignment of error, that there was insufficient evidence to prove her guilty beyond a reasonable doubt because the evidence provided by the State was inconclusive and circumstantial. The defendant claims that the State's witnesses gave contradictory testimony that was vague and inconclusive. The defendant also alleges several inconsistencies in the testimony of the State's witnesses.
The constitutional standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. State v. Bailey, 00-1398 (La.App. 5 Cir. 2/14/01), 782 So.2d 22, 24, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Schnyder, 06-29, p. 5 (La.App. 5 Cir. 6/28/06), 937 So.2d 396, 400, citing State v. Barnes, 98-932, p. 3 (La.App. 5 Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Schnyder, 06-29 at pp. 5-6, 937 So.2d at 400 (citation omitted).
The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. State v. Schnyder, 06-29 at p. 5, 937 So.2d at 400. The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Gibbs, 03-967, p. 13 (La.App. 5 Cir. 12/30/03), 864 So.2d 866, 874 (citation omitted). It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Schnyder, 06-29 at p. 5, 937 So.2d at 400 (citation omitted).
The evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 05-59, p. 5 (La.App. 5 Cir. *852 5/31/05), 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Vortisch, 00-67, p. 5 (La.App. 5 Cir. 5/30/00), 763 So.2d 765, 768. It is not a separate test from the Jackson standard; rather it provides a helpful basis for determining the existence of reasonable doubt. Id. Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id. An appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. State v. Williams, 05-59 at p. 5, 904 So.2d at 833 (citation omitted). Rather, the reviewing court must evaluate the evidence in a light most favorable to the State, and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id.
"Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein." LSA-R.S. 14:62.2. In order to convict an accused of simple burglary of an inhabited dwelling, the State must prove: (1) there was an unauthorized entry; (2) the structure was inhabited at the time of entry; and (3) the defendant had the specific intent to commit a felony or theft inside the structure. State v. Schnyder, 06-29 at p. 6, 937 So.2d at 400 (citation omitted). In order to satisfy the unauthorized entry element, the State must prove that the defendant did not have permission to enter the premises. Id. (Citation omitted.) A broken window is circumstantial evidence indicative of unauthorized entry. Id. (Citation omitted.) Broken glass on the inside of a residence creates an inference that it was broken in order to facilitate entry. Id. The requisite intent required by LSA-R.S. 14:62 is specific intent. State v. Petty, 99-1307, p. 3 (La.App. 5 Cir. 4/12/00), 759 So.2d 946, 949 (citation omitted), writ denied, 00-1718 (La.3/16/01), 787 So.2d 301. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. State v. Petty, 99-1307 at p. 3, 759 So.2d at 949 (citation omitted). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. Id. (Citations omitted).
At trial, Falcon testified that the defendant and Merwin never had a key to his residence. In addition, Falcon testified that the defendant and Merwin only had permission to retrieve their one remaining box of clothing when he was home. However, on February 15, 2006, when Falcon arrived home he found the back door of the residence wide-open and broken glass on the ground. Falcon found that various items had been taken that belonged to him and his children. Falcon testified that neither the defendant nor codefendant Merwin had permission to enter his home or to take the aforementioned items. After he called the police, Falcon also noticed that the one remaining box that belonged to the defendant and Merwin was also gone.
*853 Cancienne also testified that she saw the defendant and Merwin, whom she identified in court, back a car into Falcon's driveway. Cancienne saw the defendant and Merwin carry a heavy black trash bag, and then put it in the trunk of the car. Cancienne did not know how the defendant and Merwin entered Falcon's house because she did not think the defendant and Merwin had a key. Cancienne also testified that she had never seen a broken window on Falcon's house before that day. Deputy Jones testified that she observed that the window of the rear door to the house had been shattered, the only sign of forced entry, and a piece of plywood was put in its place.
In the present case, although the defendant argues that the evidence was inconclusive, contradictory, and inconsistent and, therefore, insufficient to support her conviction; the jury, after hearing all of the testimony, chose to accept the testimony of the State's witnesses and reject the defendant's testimony.
After viewing the evidence in the light most favorable to the State, we find a rational trier of fact could have found, beyond a reasonable doubt, that the evidence was sufficient to support the defendant's conviction. Therefore, we find the State proved through the testimony of its witnesses that the defendant committed simple burglary of an inhabited dwelling and structure beyond a reasonable doubt.

COUNSELED ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, Micelotti, through her attorney, argues it was reversible error to unduly restrict her right to confront and impeach the State's key witness for the prosecution. Defendant argues the trial court erred in not allowing her to cross-examine Falcon concerning his probation violation and the resultant outstanding warrant in Georgia. She also argues the trial court erred in not allowing her to impeach Falcon with the facts concerning the State of Louisiana's contact with Georgia authorities, including any efforts to seek forbearance of the execution of the Georgia warrant on defendant's behalf.
The State argues in opposition that the trial court did not err in limiting the scope of Falcon's cross-examination. The State contends the defendant was not prejudiced by the trial court's decision to prohibit questioning concerning Falcon's failure to comply with the conditions of his probation. In addition, the State argues that the defense cannot raise Falcon's motive for testifying and whether he received any leniency related to his outstanding Georgia warrant on appeal, since these arguments were not raised as a basis for the defense's objection. The State claims that there was neither evidence nor any allegation that Falcon testified to avoid imprisonment or that Jefferson Parish prosecutors had any leverage with Georgia officials regarding the outstanding warrant. The State also claims that the defendant has not shown that the probative value of the details of Falcon's probation violations outweighs its prejudicial effect.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. La. Const. Art. 1, § 16, State v. Schexnayder, 96-98, p. 18 (La. App. 5 Cir. 11/26/96), 685 So.2d 357, 368, writ denied, 97-2251 (La.1/16/98), 706 So.2d 973. The main and essential purpose of the confrontation right is to secure, for the opponent, the opportunity of cross-examination. State v. Robinson, 01-0273, p. 5 (La.5/17/02), 817 So.2d 1131, 1135. In addition, the confrontation clause of the Louisiana State Constitution affords *854 an accused the right to confront and cross-examine the witnesses against him. Id. Encompassed in the right of confrontation is the right of the accused to impeach a witness for bias or interest. Schnexnayder, 96-98 at p. 18, 685 So.2d at 368. The right to expose a witness' motivation in testifying is both a proper and important function of the constitutionally protected right of cross-examination. LSA-C.E. art. 607(D); State v. Nash, 475 So.2d 752, 755 (La.1985); State v. Chester, 97-2790, p. 15 (La.12/1/98), 724 So.2d 1276, 1286, cert. denied, 528 U.S. 826, 120 S.Ct. 75, 145 L.Ed.2d 64 (1999).
"A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the State regarding his conduct." Schexnayder, 96-98 at p. 20, 685 So.2d at 369, quoting State v. Vale, 95-1230, p. 4 (La.1/26/99), 666 So.2d 1070, 1072 (per curiam), citing Nash, 475 So.2d at 755-56.
"Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal." LSA-C.E. art. 609.1(B). "Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. . . ." LSA-C.E. art. 609.1(C). The details of the prior offense may become admissible in order to show its true nature when the witness failed to recall or denied the conviction; testified to exculpatory facts or circumstances surrounding the prior conviction; or when the probative value of the details of the prior conviction have been determined to outweigh the danger of misleading the jury, unfair prejudice, or confusion of the issues. LSA-C.E. art. 609.1(C)(1)(2) and (3). A witness' credibility can also be attacked by extrinsic evidence to show bias, interest, or corruption. LSA-C.E. art. 607(D)(1). Other extrinsic evidence contradicting the witness' testimony is admissible when it is offered solely to attack the credibility of a witness, unless the court determines that the probative value of the evidence is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. LSA-C.E. art. 607(D)(2).
An error in the defendant's right to confrontation is subject to a harmless error analysis. State v. Williams, 04-608, p. 11 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, 1102, writ denied, 05-0081 (La.4/22/05), 899 So.2d 559. If a confrontation error occurred, a reviewing court must determine whether the error is harmless beyond a reasonable doubt. Id. The factors considered when determining whether the guilty verdict rendered was unattributable to the error include the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination that was otherwise permitted, and, the overall strength of the State's case. Id.; State v. Robinson, 01-0273 at p. 9, 817 So.2d at 1137. (Citations omitted.) Appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated. State v. Schexnayder, 96-98 at p. 20, 685 So.2d at 369.
In this case, defense counsel for codefendant Merwin informed the court that she intended to question Falcon about an active warrant on a probation violation in Georgia. After the State objected, the trial judge informed defense counsel that she could ask about convictions, but not about open warrants. Defense counsel *855 then asked if she was allowed to question Falcon about his probation. The trial judge informed defense counsel that she could only ask about Falcon's convictions. Defense counsel objected to the trial court's ruling. During his testimony, Falcon testified that he currently was in his second term at a drug rehabilitation center. The defendant also admitted that, a year and a half before the burglary, he relapsed into drug use and was convicted of possession of cocaine in Georgia.
The defense counsel was able to attack Falcon's general credibility during her cross-examination by questioning Falcon about his conviction. Therefore, the defense counsel was able to place Falcon's general credibility at issue and elicit testimony that aided the jury in its assessment of the truthfulness of Falcon's testimony. See State v. Chester and State v. Nash, supra.
However, defense counsel was unable to address Falcon's impartiality or bias, since she was unable to question him about his outstanding warrant for a probation violation, and specifically whether Louisiana State officials had discussed with or ensured Falcon that he would not be prosecuted for the probation violation in Georgia.
In the instant case, Falcon was the victim, not just a witness. While Falcon may have had an interest in not being prosecuted in Georgia, he had an overwhelming interest in having the defendants prosecuted for burglarizing his house and taking possessions belonging to himself and his children. It was Falcon who called the police to report the crime, which led to the instant prosecution. Therefore, we find that Falcon did not have to be coerced to pursue the matter.
In addition, we find the material points of Falcon's testimony were corroborated. Falcon testified that the objects taken from his house did not belong to the defendants, and that the defendants did not have authorization to remove these objects. Cancienne testified that she saw the defendants remove a heavy trash bag from the Falcon's house and put it in their vehicle. She knew that the defendants previously had been asked to leave Falcon's house. She also knew that the defendants did not have a key to obtain entry to Falcon's house. Deputy Jones testified that she observed that the window of the rear door to Falcon's house had been shattered and a piece of plywood was put in its place. The rear door had the only sign of forced entry. Cancienne testified that Falcon's rear door window was not broken before the burglary. We find that Cancienne's testimony provided sufficient corroboration of the material points of Falcon's testimony. Therefore, even if the trial court improperly restricted defense counsel's cross-examination of Falcon, the error was harmless, since other evidence at trial corroborated Falcon's testimony. Accordingly, we find the guilty verdict unattributable to any error that may have occurred when the trial court refused to allow the defense counsel to question Falcon concerning his bias. See State v. Schexnayder, supra.

COUNSELED ASSIGNMENT OF ERROR NUMBER TWO
By this assignment, defendant, through her counsel, requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant makes such a request. The review reveals one error patent in this case.
The record reveals that the defendant was not advised of the two-year *856 prescriptive period for filing an application for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. Therefore, we remand this case with an instruction to the trial court to inform the defendant of the two-year prescriptive period by sending written notice to the defendant within 10 days after the rendition of this opinion and to file written proof in the record that the defendant received such notice. State v. Hensley, 00-1448, pp. 10-11 (La.App. 5 Cir. 2/28/01), 781 So.2d 834, 843.
Accordingly, defendant's conviction of simple burglary of an inhabited dwelling and sentence of five years at hard labor, with the first year to be served without benefit of parole, probation or suspension of sentence are affirmed and the matter is remanded for correction of an error patent.
AFFIRMED; REMANDED WITH INSTRUCTIONS.